## DAVIS & RANKIN BLDG. & MANUF'G CO. v. JONES et al.

(Circuit Court of Appeals, Eighth Circuit. February 20, 1895.)

No. 478.

CONTRACTS—JOINT OR SEVERAL—SUBSCRIPTIONS.

The D. Co. entered into a contract with J. and several others, farmers, for the construction of a butter and cheese factory. After providing that the factory should be built by the D. Co., on certain plans and specifications, for the sum of $4,350, the contract contained the following provision: "We, the subscribers hereto, agree to pay the above amount for said factory, when completed." There was also a provision that, as soon as the contract price was subscribed, the subscribers should form a corporation, with stock not less than such contract price, to be issued to the subscribers in proportion to their paid-up interest. and that each stockholder should be liable only for the amount subscribed by him. The contract was signed by J. and his associates separately, and at different times, each adding to his signature a statement of the number of shares subscribed for by him, and the amount of stock to which he would be entitled, after incorporation. *Held*, that the contract of J. and his associates was several, and not joint, and that each was bound only for the amount of his own subscription.

In Error to the Circuit Court of the United States for the District of Nebraska.

This action was brought by the Davis & Rankin Building & Manufacturing Company, the plaintiff in error, against J. T. Jones and numerous other defendants, the defendants in error, to recover damages for nonperformance by the defendants of a contract for the erection of a butter and cheese factory at or near Tecumseh, Neb. The material portions of the contract were as follows:

"Form Two.

"Contract and Specifications for a Combined Butter and Cheese Factory on the Co-operative and Farmers' Protective System.

"The Davis and Rankin Building and Manufacturing Company, of Chicago, Illinois, party of the first part, hereby agrees with the undersigned subscribers hereto, party of the second part, to build, erect, complete, and equip for said party of the second part a combined butter and cheese factory, at or near Tecumseh, Nebraska, as follows, to wit: The factory building shall be twenty-eight feet wide and forty-eight feet long, by twelve feet high, with an addition attached, twelve feet by twenty-four feet, for boiler, engine, and office. Said building shall rest upon foundations described in specifications hereon. Said factory building is to be one story high, and divided into rooms, as shown on working plan, viz.: A manufacturing room, ice refrigerator or cold-storage room, cheese-curing room, office, boiler, and engine room. Said factory shall be equipped with the following outfit, to wit: [Here follows a description of the equipment of the factory, and numerous other provisions not necessary to be mentioned.] The Davis and Rankin Building and Manufacturing Company agrees to erect said butter and cheese factory, as set forth by the above specifications, for forty-three hundred and fifty dollars, payable in cash when the factory is completed, or approved note for ninety days. We, the subscribers hereto, agree to pay the above amount for said butter and cheese factory when completed. Said building to be completed within ninety days or thereabout after the above amount ($4,350) is subscribed. Any portion of the amount subscribed not paid according to contract shall bear legal rate of interest. As soon as the above amount ($4,350) is subscribed, or in a reasonable time thereafter, the said subscribers agree to incorporate under the laws of the state, as therein provided, fixing the aggregate amount of stock at not less than $4,350, to be divided into shares of $100 each. Said share or shares, as above stated, to be issued to the subscribers hereto in proportion to their paid-up interest herein, and it is herein

agreed that each stockholder shall be liable only for the amount subscribed by him. It is further distinctly understood by and between the parties hereto that if the subscriptions hereto shall amount to more than $4,350, and less than $4,950, the foregoing agreement, designated 'Form Two,' shall constitute the agreement between the parties; if the subscriptions hereto shall amount to more than $4,950, then the foregoing agreement, designated 'Form Three.' All money that shall be paid in or collected upon this contract in excess of the contract price of the plant shall belong to the party of the second part. It is hereby understood that the Davis and Rankin Building and Manufacturing Company will not be responsible for any pledges or promises made by its agents or representatives that do not appear in this contract, and made a part thereof, either in print or in writing. For the faithful and full performance of our respective parts of the above contract we bind ourselves, our heirs, executors, administrators, and assigns. Executed and dated this 7th day of October, 1892.

> "Davis & Rankin Bldg. & Mfg. Co., the First Party,
> "Per F. H. Sherer, Special Agent."

Then followed lengthy specifications for the building of the butter and cheese factory in question, and thereafter the names of numerous subscribers signed to a paper in the following form:

| "Names of Subscribers. | Number of Shares. | Amount of Stock After Incorporation. |
|---|---|---|
| J. T. Jones | 2 | $200 |
| Chamberlain Bros | 2 | 200," etc. |

In the circuit court of the United States for the district of Nebraska, where the case was tried, a verdict and judgment was rendered in favor of the defendants, and the plaintiff, the Davis and Rankin Building and Manufacturing Company, has brought the case to this court by writ of error.

Paul F. Clark (Charles S. Allen, W. F. Rightmire, and J. A. Woodbury, on brief), for plaintiff in error.

Clarence K. Chamberlain (J. W. Deweese and F. M. Hall, on brief), for defendants in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The only question arising in this case that we have found it necessary to consider is whether the contract on which the suit was founded imposed a joint or a several liability, so far as the parties of the second part were concerned. If it is a several contract,—that is to say, if the various subscribers only bound themselves to pay for the erection of the butter and cheese factory in question the sums set opposite their respective names,—then the circuit court of the United States had no jurisdiction of the case, the amount in controversy being less than $2,000, and the action should have been dismissed for that reason. This contract, or one nearly identical with it in form, has been before the courts for construction on several previous occasions, and the question whether the subscribers thereby bound themselves jointly to pay the full contract price, or severally to pay the sums by them respectively subscribed, has been considered at length, and often decided. In the following cases it was held that the contract simply required each subscriber to pay the amount of his individual subscription: Davis

v. Belford, 70 Mich. 120, 37 N. W. 919; Manufacturing Co. v. Barber, 51 Fed. 148; Gibbons v. Grinsel (Wis.) 48 N. W. 255; Davis & Rankin Co. v. Hillsboro Co. (Ind. App.) 37 N. E. 549; Manufacturing Co. v. Booth, Id. 818; Manufacturing Co. v. McKinney (Ind. App.) 38 N. E. 1093; Frost v. Williams (S. D.) 50 N. W. 964,—while in the following case the contrary view was taken, and the contract was held to impose a joint liability: Davis v. Shafer, 50 Fed. 764. It is worthy of notice, however, that in the case last cited (Davis v. Shafer) the conclusion reached, that the contract imposed a joint liability, was influenced to some extent by the view entertained by the court of the effect of a local statute of the state of Missouri, where the contract was executed. Rev. St. Mo. § 2384. We have felt constrained to concur in the views taken in those cases, above cited, which hold that the liability imposed by the contract is several, and not joint. Without repeating in detail the reasons that have been given to sustain this view, it is sufficient to say that, as the contract was made in a rural community, and the amount promised to be paid for constructing the plant was quite large, it is not probable that the several subscribers when they signed the paper, which was in the form of a subscription list, supposed that each was binding himself to pay the entire cost of the plant, to wit, the sum of $4,350, or the sum of $4,950, if the subscriptions reached the later amount. The very form of the paper which was circulated for signatures was well calculated to create the impression that each person would only be held bound to pay the sum set opposite his name, and the clause inserted in the agreement, "that each stockholder shall be liable only for the amount subscribed by him," was also well calculated to confirm that impression. We think it highly probable that each subscriber understood that the liability incurred by signing the agreement was limited to the amount of his individual subscription. Men of limited means do not usually bind themselves jointly with others to pay as large a sum as $4,500 without knowing who are to be bound with them; and yet, in view of the manner in which the signatures to this contract were obtained, these defendants were guilty of that folly, if we presume that each one of them, when he signed the subscription list, understood that he was thereby binding himself individually to pay the whole cost of the factory. It is a noteworthy fact that, before the contract in suit was executed, two of the cases above cited, holding that it imposed a several liability, had been decided. Davis v. Belford and Manufacturing Co. v. Barber, supra. It had been decided, on the other hand, by the circuit court of the United States for the Western district of Missouri, that it imposed a joint liability. Davis v. Shafer, supra. These conflicting decisions were presumably well known to the plaintiff company, but were unknown to the defendants. Under these circumstances, it was the duty of the plaintiff to alter the form of its contract then in use so as to avoid the question whether it imposed a joint or a several liability which had theretofore given rise to conflicting decisions. Not having done so, the plaintiff cannot complain if the courts adopt a construction of the contract

which is most favorable to the defendants. The judgment of the circuit court is reversed at the cost of the plaintiff in error, and the cause is remanded to the circuit court, with directions to dismiss the suit for want of jurisdiction, and at the plaintiff's cost.