S. AUSTIN BICKING, Respondent, v. JOHN STEVENS, Appellant.

**Kansas City Court of Appeals, February 15, 1897.**

1. **Sales:** TIME OF PAYMENT: CONSIGNEE. Where the consignee is to sell the consigned goods upon terms fixed by himself and he is bound to pay the consignor a fixed price, the contract is one of sale; and the fact that the payment is to be made on the contingency of the consignee's selling does·not affect the character of the transaction as a sale.

2. ————: HOLDING ACCEPTANCE FOR BALANCE DUE. If the consignor retains for twenty days an acceptance signed by the consignee to balance account with an expression that this will be more satisfactory than to carry the stock without realizing on it, such retention will be an implied acceptance of the offer and the action will amount to a sale.

*Appeal from the Jackson Circuit Court.*—HON. R. E. BALL, Special Judge.

REVERSED.

*McDougal & Sebree* and *Wollman & New* for appellant.

(1) The first arrangement between Campe and plaintiff before the note was given was a sale, not a consignment to Campe as a factor to sell on commission. *Commisky v. Williams*, 20 Mo. App. 606. (2) The act of plaintiff in receiving and holding the note for twenty days without objection is sufficient evidence of acceptance. *Robertson v. Tapley*, 48 Mo. App. 239, 242.

*Kagy & Bremermann* for respondent.

(1) If it was a consignment for sale, and not a sale, then title never passed. There can be no doubt

on this point, and it is useless to cite authority. (2) A note is never payment unless so agreed upon by and between the parties. The general rule is that a promissory note does not constitute payment unless received by the creditor; here there was no creditor, Bicking being a principal, and Campe an agent under an express agreement to take it as absolute payment. *Cave v. Hull*, 5 Mo. 59; *Charlotte v. Lum*, 9 Mo. 64; *Appleton v. Kenson*, 19 Mo. 637; *Howard v. Jones*, 33 Mo. 583; *Block v. Dorman*, 51 Mo. 31; *Wiles v. Robinson*, 80 Mo. 52, and cases cited at bottom of page; *Bertrian v. Dillon*, 20 Mo. App. 603; *Commisky v. McPike*, 20 Mo. App. 82; *Selby v. McCulloch*, 26 Mo. App. 66; *Land Co. v. Rhodes*, 54 Mo. App. 129. (3) The evidence sufficiently refutes appellant's third and last contention, that the act of plaintiff in receiving and holding the note for twenty days without objection is sufficient evidence of acceptance. *Gray v. Gray*, 83 Mo. 106. When estoppel is relied upon it must be pleaded. *Ferman v. Whitford*, 39 Mo. App. 311; *Noble v. Blount*, 77 Mo. 235; *Petring v. Christler*, 90 Mo. 649; 2 Herman on Estoppel, p. 894, sec. 768; p. 895; p. 1157, sec. 1029; *Schenk v. Stump*, 6 Mo. App. 381; *Kincaid v. Downing*, 51 Mo. 552; *Frederick v. Mo.*, 82 Mo. 402; *Collins v. Rogers*, 63 Mo. 515; *Evans v. Snyder*, 64 Mo. 516; *Spurlock v. Sproule*, 72 Mo. 503; *Bank v. Baldewick*, 45 Ill. 376; *Simms v. Clark*, 11 Ill. 137; *Burrill v. Bank*, 51 Barb. (N. Y.) 105; *Doebling v. Loos*, 45 Mo. 150.

SMITH, P. J.—This is a suit in equity. The allegations of the petition in substance are that the defendant, by virtue of a certain deed of trust executed by one Campe to him as trustee for certain creditors, was in possession of certain specific articles of merchandise, which were the property of the plaintiff at the time of the execution of said deed of

PLEADING.

trust and the taking possession thereof by defendant, etc. The prayer was that the defendant be required in his quality as trustee to return the said merchandise, or, if sold, to account for the proceeds, etc.

The answer denied all the allegations of the petition except that in relation to the execution of the deed of trust, which was admitted. There was a trial and decree for plaintiff, and defendant appealed.

The plaintiff was a manufacturer of roofing paper at East Downingtown, in the state of Pennsylvania. W. E. Campe, as the successor of the W. C. Campe Roofing & Manufacturing Company, a corporation, was engaged in the business of manufacturing paints and saturating fluids and in selling building papers, waterproof materials, etc., at Kansas City, under the name and style of the W. E. Campe Manufacturing Company. Campe executed to the defendant a deed of trust on certain real property and merchandise to secure the payment of something like about $15,000 of indebtedness due the creditors therein named. Included in the personal property covered by the deed of trust was that mentioned in the petition and claimed by the plaintiff. Whether the plaintiff or Campe was the owner of the property in controversy at the time of the conveyance and delivery thereof to the defendant under the deed of trust, is the question which is presented for decision.

FACTS.

It appears from the testimony of the plaintiff's son that the agreement between the plaintiff and the corporation, already mentioned, was to the effect that the plaintiff would ship out goods on consignment to be sold by it on plaintiff's account. That under the agreement the said corporation was, on the first of each month, to render an account of the amount of the sales made during the previous month. It was to itemize

the goods remaining unsold in the stock, but not those sold.

These accounts were rendered, generally accompanied with a note or cash for the goods sold during the previous month. This agreement and practice was not changed in any way after Campe succeeded the corporation. On April 4, 1895, Campe wrote the plaintiff the following letter: "We inclose you acceptance for $1,075.91 to balance account to date, as per statement inclosed. * * * We thought it would be more satisfactory to you to send an acceptance for stock on hand than to carry same in stock so long, not realizing anything on it." Although this letter reached plaintiff in the due course of mail no response was made thereto. Afterward, on the nineteenth of April, Campe executed the deed of trust already referred to. It appears that later on the plaintiff, hearing that Campe had made the deed of trust, sent his son to Kansas City, who called upon Campe, and after inquiring into the situation expressed, at first, a doubt as to whether he, as the representative of the plaintiff, would retain the note, some twenty days previously received, or would surrender it and claim the goods then in possession of defendant. He finally concluded to pursue the latter course and then it was that the offer to return the note was for the first time made.

It appeared that on the face of the plaintiff's invoices of the goods shipped to the W. C. Campe Roofing & Manufacturing Company were printed the words, "To be sold on our account." On the other hand, it was testified by Campe that the course of dealing between him and plaintiff was that on the first of the month he would render a statement to plaintiff showing the goods that were on hand, and what amount had been sold, and send the cash or a note to settle for the amount sold, and that this manner of dealing had been

going on without explanation since he had taken charge of the business. The undisputed evidence showed that plaintiff had nothing to do with making the prices for which Campe was to sell the goods, nor whether to be sold for cash or on credit. There was no understanding as to these matters. It further appeared that Campe sold the goods mostly on credit, and, in fact, sold the goods on his own account and on such terms as he liked. For the goods sold each month he gave his note or remitted cash without reference to whether he had collected for the same or not. It is not disputed that Campe paid the freight on the goods shipped to him by plaintiff, nor that he had them insured in his own name.

Campe further testified that in the spring of 1895, just before the time he gave the plaintiff the note hereinbefore mentioned, that a traveling man of the latter had visited Kansas City and had offered the plaintiff goods $2 less per ton than he (Campe) was paying, and that in view of this he concluded to quit doing business with plaintiff and accordingly wrote him said letter of April 4, inclosing his note in full settlement of his account to that date, or, in other words, in settlement for the goods sold the previous month as well as for those on hand. The undisputed evidence shows that the whole course of dealing between plaintiff and Campe was that when the former shipped the goods to the latter that a fixed price was charged for them; that the latter paid the freight and insurance thereon; that he fixed his own prices and terms of sale; that the sales were made on his own account and not on that of the plaintiff; that he alone looked to the purchaser for payment; that he rendered the former no account of sales but only a statement of the amount of the sales of the previous month and the items remaining on hand; that both parties treated the goods as those of

the latter after they were put on the cars for shipment; that the latter at the end of each month, under the agreement, was required to pay the former for the goods sold during the previous month, and that the price so required was the price charged when the same was shipped; that the former did not pay the amount of the freights or insurance paid by the latter, nor did he pay the latter any commission on sales made.

*Blows v. Spear*, 43 Mo. 496, was where defendant agreed to furnish plaintiff's intestate with tobacco of a certain grade and at a fixed price per pound for resale.

SALES: time of payment: consignee.

The plaintiff's testimony tended to show that the tobacco was to be paid for when sold. The defendant's testimony tended to show that the payment was to be made at the end of the month in which the tobacco was delivered and if not resold at that time, the payment was to be deferred another month. Under this arrangement nine hundred and forty pounds of tobacco was delivered, when a sale amounting to $318 had been effected, and a fire destroyed the residue. The bookkeeper of plaintiff's intestate, not being aware of the nature of the arrangement under which the tobacco was furnished by defendant, paid the latter $940 in full settlement of his claim. The suit was to recover the overpayment. At the trial the court instructed the jury that the transaction between the parties did not constitute a sale, and that the property remained at the risk of the defendant if they found that the purchase money under the contract of sale was to be paid only after a resale. The supreme court condemned this instruction for error, and declared that "The time in which the purchase money was to be paid —whether in so many days or months, or upon the happening of some contingent event, as a resale—did not affect the character of the transaction as a sale. The provision in relation to payment did not suspend

the transfer of title. The sale was complete and the title passed when the goods were delivered and the purchaser put in full possession and control of them." In Newmark on Sales, section 23, it is said:

"But the relation of the parties is not that of principal and agent if the consignee is at liberty, according to the contract between him and his consignor, to sell at any price he likes and receive payment at any time he likes, though he is bound, if he sells the goods, to pay the consignor for them at a fixed price and a fixed time." In 21 American and English Encyclopedia of Law, 520, it is stated: "In the case of goods consigned to be sold for the consignor, who is to regulate the price and terms of sale, the factor is an agent and the contract one of bailment. * * * If, however, the consignee or factor is to sell upon terms fixed by himself, and is bound to pay to the consignor a fixed price, the contract is one of sale." *Arthur v. Wilder*, 3 Barb. 66 was where the defendant gave a receipt in these words: "Received of J. W. three barrels of white fish, to be paid for, when sold, at $6 a barrel," and the court held, "The transaction was clearly a sale of the fish at $6 per barrel." In *Braunn v. Keally*, 146 Pa. St. 519, 524, the agreement was: "The goods were to be billed by plaintiffs to defendant at factory prices in the city of Chicago, less five per cent, defendant paying freight at Pittsburg, the point of delivery; and defendant was to receive for his services whatever price he could obtain above the bill price and freight." The court said, in deciding whether the contract was one of sale or not: "Notwithstanding the ingenious color of agency thus sought to be thrown over it, this is a contract of sale. The defendant was to get the goods at the stipulated rate, and was entitled to receive the full price he could sell them for. What more or less does any purchaser do who buys to sell again? If he

made a profit it was his; there was no duty to account; if he made a loss that, also, was his, for the agreement made no stipulation for recoupment. It was a plain, ordinary case of sale and carried with it the obligation to pay the agreed price." In the case of *Granite Roofing Company v. Casler*, 82 Mich. 466, the transaction was almost identical with the case at bar. May 19, 1886, the defendants were given the right to handle patent roofing of the plaintiff in certain counties of Michigan. On the same day the arrangement was made there was entered on the contract the following memorandum: "Sold Casler & Co. one car load of roofing to be paid for as sold; settlement to be made monthly of all sold." The agreed price was $562.50. The car load was shipped and received by the defendants and they made some sales and settlements as agreed. On July 12, 1887, the balance of the goods on hand were destroyed by fire. The plaintiff sued for the price of the goods so destroyed, claiming the transaction amounted to a sale. The defendants claimed that they held the goods for sale on account, and the lower court so held and found for defendants. But the supreme court held that it was a sale upon credit; the time of payment being fixed at the end of each month after defendants had made sales, and reversed the judgment and gave judgment for plaintiff. In *Ex parte White*, L. R. 6 Ch. Ap. Cas. 397, it was held that "if the consignee is at liberty to sell at any price he likes, and receive payment at any time he likes, but is to be bound if he sells the goods to pay the consignor for them at a fixed price and a fixed time, in my opinion, whatever the parties may think, their relation is not that of principal and agent * * * and in point of law the alleged agent in such a case *is making on his own account a purchase from his alleged principal and is again reselling.*" And to the same effect are *Peora Co. v.*

*Lyons*, 153 Ill. 427; *Chickering v. Bastress*, 22 N. E.
Rep. 542.

It seems to us that the transaction between plaintiff and Campe, even as disclosed by plaintiff's evidence, when tested by the rule established by the foregoing authorities, was a sale, and that the title of the goods passed thereby from the former to the latter.

But if the transaction thus far considered did not constitute a sale we think Campe's letter to plaintiff of April 4, 1895, wherein the former inclosed with his statement his note for $1,075.10, and stated that the same was to balance their account to date, and that he thought it would be more satisfactory to the latter to send him his note for stock on hand than to carry the same along and thereby realizing nothing on it, contained a plain, unconditional offer of purchase for the unsold goods in the possession of the former. If the plaintiff had written an acceptance of this offer no one would question but that the contractual relation resulted therefrom. But plaintiff contends that though he received the offer in the due course of mail, yet as he did not signify his acceptance thereof he is not thereby bound. He retained Campe's note for twenty days and made no response until after the deed of trust was executed and put upon the record. It may be well inferred that if it had not been for the discovery of this fact, or if it had never come into existence, he never would have declined to accept the offer. Even after he was apprised of the execution of the deed of trust he offered to return the note rather hesitatingly. We must think that from all the circumstances attending the receipt of the offer including that of the retention of the note, that the plaintiff's acceptance was plainly implied. Clark on Contracts, 28; Leake on Contracts, 16. In either view that may be taken of the case the result is the same. Our con-

—: holding acceptance for balance due.

clusion is that at the time Campe executed the deed of trust the title to the goods in question was in him and that he thereby passed the same to defendant.

Since we shall reverse the judgment without remanding the cause it is unnecessary to notice the other errors assigned by defendant. Decree reversed. All concur.