## BRADLEY, ALDERSON & CO. v. McAFEE.

(District Court, W. D. Missouri, S. D. October 26, 1906.)

No. 258.

1. BANKRUPTCY—CONTRACTS WITH BANKRUPT—CONDITIONAL SALES—FAILURE TO RECORD.

A contract between claimant and the bankrupt's predecessor in business, which was continued by the bankrupt, provided for the sale of vehicles to be shipped by claimant to the bankrupt, who assumed the risk thereof from the time they were loaded on the cars at the point of shipment. The bankrupt agreed to pay the freight, insurance, and taxes, and house the vehicles when received, and to assume any loss by fire, flood, mobs, or any other cause, with or without his fault. The contract called the consignee the shipper's factor, but contained no provisions for accounting, and, instead of providing for the return of unsold goods, provided that the consignee agreed to purchase and pay for such goods at net cash prices, at the option of the consignor, or, if defendant so elected, the goods might remain in the consignee's possession, under the agreement, subject to future settlements. *Held,* that such agreement was a contract of con-

ditional sale, and not a contract of agency, and was therefore void, as against the bankrupt's trustee and creditors, for failure to record the same, as required by Rev. St. Mo. 1899, § 3412.

2. SAME—RECORD—TIME.

The record of such contract, after the filing of a petition in bankruptcy against the buyer and when the property was in the actual possession of the court's receiver, but before adjudication in bankruptcy, was insufficient to save the seller's rights to possession of the property.

John S. Farrington, for claimant.
E. C. McAfee, pro se.

PHILIPS, District Judge.   Bradley, Alderson & Co., a corporation doing business at Kansas City, Mo., presented to the referee in bankruptcy, after the selection and qualification of a trustee in bankruptcy, its petition claiming certain goods or the proceeds thereof in the hands of the bankrupt at the time of the filing of the petition against him, which property was first taken charge of by a receiver appointed by the court in the bankruptcy proceeding and afterwards turned over to the trustee in bankruptcy.   The bankrupt was a merchant at Marshfield, Webster county, Mo., engaged in the business of selling wagons, buggies, and other vehicles.   The claim of the petitioner is that certain buggies on hand in the possession of the bankrupt at the time of the institution of the proceedings in bankruptcy were held by him merely as an agent or factor for said company, to be sold on commissions, and that the title thereto was in the petitioner, and not in the bankrupt.   The referee found as a matter of fact and law that this property was, as to the creditors of the bankrupt, held under a contract of conditional sale in reality, and, as the contract was not acknowledged and recorded, as required by section 3412, Rev. St. Mo. 1899, it was absolutely void as to the creditors of the bankrupt; and he denied the claim.   To review this action of the referee, the matter has been certified to this court.

The contract in question was entered into in July, 1905, between Bradley, Alderson & Co., as party of the first part, and Freeman Evans, as party of the second part.   The substantive provisions of said contract are as follows:

"Party of the second part agrees to receive and pay freights on any and all goods shipped, to house and protect the same from the weather and elements, and sell at retail as the agent of the party of the first part; sales on time to be made only to good and responsible parties.

"The party of the second part agrees to take up and pay for in cash all notes pronounced unsafe or doubtful, upon request of the party of the first part.   The list of prices attached to be the prices at which the goods shall be billed by party of the first part to party of the second part; said goods not to be sold for less than said figures.   Prices subject to change without notice. All sums received by party of the second part for the sale of goods over and above said prices to be retained by the party of the second part as his compensation and commission for the performance of the contract.   Party of the second part to remit to party of first part the proceeds of all goods at invoice prices in settlement of sales, as follows:   On cash sales to remit the cash at the time of sale, less cash discount as stated below; for time sales to remit purchaser's notes drawing 7 per cent. interest from date, due and payable in the following time from date of sale:   On spring vehicles, 4, 6. or 8 months.   Party of the second part agrees to sell not less than one-third of all goods sold for cash.

.: "All purchaser's notes ·to be indorsed· and payment guarantied' at 'maturity ·by second party. Full reports of sales and settlement for same 'to .be remitted on the 1st and 15th of each month.      '

"This mode of settlement to be effective on the respective kinds ·of goods until the following dates:

                                                       .No cash· discount after

Implements ......................................... ................
Wagons ............................................. ................
Spring vehicles, 7–1–06............................. 5–1–06.
Harness and windmills............................... ................

"Any and all goods of the respective kinds on hand at these dates the said party of the second part agrees to purchase, and to pay and settle for the same as follows:

Implements ...............................................................
·Wagons .................................................................
Spring vehicles, net cash...............................................
Harness .................................................................
Windmills ...............................................................

with ―――― per cent. interest from maturity, at option of party of the first · part, or, if the party of the first part so elects, said goods to remain in pos- ·session of the party of the second part on the basis of this agreement, sub- ject to settlement provided for goods as sales are made only. Any and all ·,goods shipped on the basis of this contract to ·be and remain absolutely the 'property· of party of the first part and subject to their order and removal at · any and all times.

"In consideration of party of the first part carrying said stock ·of goods subject to sale, and at the expense of interest for value and special terms given, party of the second part agrees to be fully responsible for all dam- age or loss by fire or otherwise to any and all goods shipped under this con- tract, and to furnish party of the first part policy of insurance in their favor. Premium to be paid by party of the second part. Party of the second part to pay any and all taxes and insurance on any and all goods shipped under this contract.

"No settlements under this contract are binding on Bradley, Alderson & Co. until their acceptance is indorsed thereon at their office.

. "This order is not complete or binding until acceptance is indorsed here- on by Bradley, Alderson & Co. at their office in Kansas City, Mo.

"This contract to remain in force and effect until full and final settlement is made by party of the second part to party of the first part."

At the hearing before the referee is was stipulated "between the claimant, by its attorney, and the trustee and the general creditors, by their attorneys," that the goods described in the claimant's petition were delivered to W. W. Ward (he having succeeded to the rights of Freeman Evans under the contract), and were taken into possession of the receiver (in bankruptcy), and later by the trustee; that neither ·of said contracts were placed on file in the office of the 'recorder of deeds of Webster county, Mo., until the 4th day of June, 1906, which ' was after the filing of 'petition in bankruptcy and taking charge of stock by the temporary receiver, but before the adjudication of bank- ruptcy, when both were so filed and recorded in said office; that the said goods were received by said Ward and by him commingled with other goods then in stock, without anything to mark the same as not ..being a part of. the general stock of goods owned by said Ward, eith- er in the nature of brands or marks or the manner of keeping and stor- ' ing the same, unless it be that, when the receiver took charge, all of . said goods, except two or three carriages, were still crated, and had the card or shipping tag of the claimant attached thereto, .with claimant's

name and manufacturing number thereon; that a large number of general creditors have proved their claims against said estate and had the same allowed before the referee, to an aggregate sum of near $3,000; that a majority of these general creditors had no knowledge or notice of the fact that said goods were not paid for in full, nor that the claimant had or claimed title thereto, or any interest therein or lien thereon; that said estate will not pay all of said general claims in full; that claimant had demanded return of said goods and filed this claim before or with the referee prior to the allowance of said claims of the general creditors.

The evil connected with and growing out of the reclamation of goods by alleged owners after the insolvency of the party, to whom they were intrusted as the ostensible owner under undisclosed contracts, whereby the vendor retained the title in himself, and sometimes under the guise of a lessor, hirer, and the like, became the subject of legislative action in Missouri, until it was finally expressed in section 3412, Revised Statutes of Missouri of 1899, as follows:

"Conditional Sales Void As to Creditors Unless Recorded.—In all cases where any personal property shall be sold to any person, to be paid for in whole or in part in installments, or shall be leased, rented, hired, or delivered to another on condition that the same shall belong to the person purchasing, leasing, renting, hiring or receiving the same whenever the amount paid shall be a certain sum, or the value of such property, the title to the same to remain to the vendor, lessor, renter, hirer or deliverer of the same, until such sum, or the value of such property, or any part thereof shall have been paid, such condition, in regard to the title so remaining until such payment, shall be void as to all subsequent purchasers in good faith, and creditors, unless such condition shall be evidenced by writing executed, acknowledged and recorded as provided in cases of mortgages of personal property."

It is to be observed that this statute is most comprehensive in its terms. It not only covers property sold, to be paid for in whole or in part in installments, or which shall be leased, rented, or hired, but it covers property "delivered to another on condition that the same shall belong to the person purchasing, leasing, renting, hiring or receiving the same whenever the amount paid shall be a certain sum, or the value of such property, the title to the same to remain to the vendor," etc., "or deliverer of the same, until such sum, or the value of such property, or any part thereof, shall have been paid." The courts of this state construe the provisions of this statute rigidly. They have uniformly held that such contracts, unacknowledged and unrecorded, are absolutely void as to all creditors, both prior and subsequent, whether they have notice or not of the existence of such unrecorded contracts. Collins v. Wilhoit, 108 Mo. 451, 456, 458, 18 S. W. 839; Hughes v. Menefee, 29 Mo. App. 192; Jewet & Company v. Preist, 34 Mo. App. 509; Johnson-Brinkham Co. v. Central Bank, 116 Mo. 571, 22 S. W. 813, 38 Am. St. Rep. 615; Straus v. Rothan, 102 Mo. 266, 14 S. W. 940; Cooper Wagon & Buggy Co. v. Wooldrige, 98 Mo. App. 648, 73 S. W. 724.

In Bicking v. Stevens, 69 Mo. App. 168, it is held that where the consignee is to sell the consigned goods upon terms fixed by himself, and he is bound to pay the consignor a fixed price, the contract is one of sale, and "the fact that payment is to be made on the contin-

149 F.—17

gency of the consignee's selling does not affect the character of the transaction as a sale." The court held that:

"The time in which the purchase money was to be paid, whether in so many days or months, or upon the happening of some contingent event, as a resale, did not affect the character of the transaction as a sale. The provision in relation to payment did not suspend the transfer of title. The sale was complete, and the title passed when the goods were delivered and the purchaser put in full possession and control of them."

If this transaction between Bradley, Alderson & Co. and the bankrupt comes within the purview of said statute, it was absolutely void as to all creditors of the bankrupt; and the trustee in bankruptcy, who represents the creditors, must of necessity be the only party who can assert this right in favor of the creditors. Under the Missouri statute it is not necessary, as under the Ohio statute, followed by the Supreme Court in York Manufacturing Company v. Cassell, 201 U. S. 351, 25 Sup. Ct. 481, 50 L. Ed. 782, that to enable the trustee to avail himself of the statute the creditors should, by levy or attachment anterior to the proceedings in bankruptcy, have taken steps "to fasten upon the property for payment of the debt." Nor does the case of Hewit v. Berlin Machine Works, 194 U. S. 296, 24 Sup. Ct. 690, 48 L. Ed. 986, apply, as that case arose under the New York statute, which avoided the sale only as to "subsequent purchasers in good faith," and there was no evidence in the case of the creditors being such purchasers.

As applied to the Missouri statute, the holding by the Court of Appeals of this Circuit in Re Pekin Plow Company, 112 Fed. 308, 310, 50 C. C. A. 257, is conclusive on this court, which is that:

"The institution of proceedings in bankruptcy amounts to an effectual sequestration for the benefit of all his creditors of all property of the bankrupt. By such a proceeding the creditors 'are using the courts of law and their processes for the collection of their debts,' and the creditors thereby make an effectual seizure of the property of the bankrupt. * * * The trustee chosen under the act of 1898 becomes the representative of all creditors, and is possessed of their rights to attack fraudulent conveyances. It has been held by this court that the trustee is so much the representative of all the creditors that no appeal can be taken under the provisions of Act July 1, 1898, c. 541, § 25a, 30 Stat. 553 [U. S. Comp. St. 1901, p. 3432] from an order of the District Court allowing a claim of any individual creditor who objected to such allowance, but that such appeal can only be taken by the trustee as the representative of all the creditors."

See, also, Missouri Moline Plow Company v. Spilman (D. C.) 117 Fed. 746.

The question to be decided is: What was and is the real character of the contract between Bradley-Alderson & Co. and the bankrupt? Was the actual status of the bankrupt that of a mere agent or factor to sell the goods on commission, or was it a disguised contract of sale to evade the requirements of the spirit of the Missouri statute? Were it not for the ruling of the Court of Appeals in John Deere Plow Company v. McDavid, 137 Fed. 802, 70 C. C. A. 422, I should feel no embarrassment or hesitancy in holding that the contract in question is a cunningly devised scheme for avoiding the statute. Many of the provisions of the contract in the John Deere Plow Company

Case are materially different from those in the case at bar. It is evident to my mind that in its last analysis what controlled the judgment of the court in the John Deere Case was the construction placed upon the contract that it recognized a right of the consignee at some time to return the goods in kind to the consignor, based, doubtless, upon the stipulation found in that contract that it was "to remain in force, unless canceled and annulled by said first party, until October 1, 1904, at which time said second party agrees, if required by said first party, to return all goods remaining on hand unsold at the expiration of this contract to them at their warehouse at Kansas City, in good order and free of all freights and charges." This must be so, as the court cites in support the case of Metropolitan National Bank v. Benedict Company, 74 Fed. 182, 20 C. C. A. 377, in which Judge Caldwell said:

"The money to be paid by the commission company was not upon a sale of the goods to that company, but upon a sale of the goods by that company. The commission company was never to pay for the goods as upon a purchase by it, but only to account for the proceeds of the sale of them at prices fixed by the contract."

The court also cites the case of In re Galt, 120 Fed. 64, 56 C. C. A. 470. An analysis of the facts in that case justified the conclusion of the court that it recognized a period at which the consignee might return the goods. As Judge Jenkins said in the opinion:

"The company could compel a return of the goods not sold. Galt had not the option to pay for them in money. Even with respect to the goods unsold within 12 months, the option for their return or payment was with the company, and not with Galt; and nowhere in the agreement does the latter covenant to pay for these goods, as in the case of a sale."

Turning to the contract under review, what do we find? Every obligation, risk, and burden were imposed upon Ward, as upon any other conditional purchaser. From the moment the goods were loaded upon the cars at Kansas City, they were at the risk of the consignee. He was to pay the freight, the insurance, the taxes, and to house and care for them when received. If they were destroyed by fire, or flood, or mobs, or from any cause, with or without the fault of the consignee, the loss was his. We search this contract in vain for any provision which enabled this so-called factor, at any time or under any circumstances or conditions, to return the goods, except at the option of Bradley-Alderson Co. On the contrary, the contract contains the following provision:

"Any and all goods of the respective kinds on hand at these dates (referring to the antecedent date, which would have been July 1, 1906) the said party of the second part agrees to purchase, and to pay and settle for the same as follows: Net cash, with —— per cent. interest from maturity, at option of the party of the first part, or, if party of the first part so elects, said goods to remain in possession of party of the second part on the basis of this agreement, subject to settlement provided for goods as sales are made only."

From which it is patent that at a specified date Ward was compellable by Bradley, Alderson & Co. to pay for the goods at a designated cash price. He had no alternative left him of choice. It was wholly at the election of Bradley, Alderson & Co. If so demanded by Brad-

ley, Alderson & Co., when the time arrived, just as in the case of any other purchaser of goods, Ward was compellable to pay the stipulated price, whether or not he had sold a single article. This payment made, he would become the absolute owner. I respectfully, but earnestly, submit that, if such a contract can pass as a consignment made to a factor, all that any vendor has to do to evade and render valueless the declared public policy of the state to compel the placing of conditional sales or delivery contracts on record is to send his wares to a country merchant, to be displayed in his store as his own, and sell to whom he may select, to be paid for to the sender at a future time, at a given price, at his option, provided, only, that the sender call the transaction, inter nos, a consignment or commission, or himself principal and the sendee his agent. If, when the time of payment arrives, the shipper wants his money, he elects to have the sendee pay the cash, provided he then be solvent; but, if the sendee become insolvent and bankrupt, the sender then leaves himself in position to exercise his other option to demand and reclaim the goods. If such cunning jugglery as this can get around or through the Missouri statute, then it is but a cobweb through which the cunning of the vendor, with the subservient assistance of his vendee, may break at will.

To escape this criticism it is urged that the paragraph above quoted; which imposes upon the sendee the obligation to pay cash prices therefor at a given time, gives to the sender the option to continue the possession of the sendee on the basis of the agreement, subject to settlement provided for. In giving effective operation to the state statute, this contract should be construed rather by its expressed possibilities, as to what the vendor may do and claim under it, than by its double aspect, under which it may be a sale or not, at the pleasure of the vendor. Can a court sanction such cunning evasion of a state statute, by which, at a given date, the consignor of the goods may, at his pleasure, compel the consignee to pay the fixed cash price therefor, if at that time the consignee be solvent, but, if then insolvent, the consignor may assert that there was no sale and the right of reclamation? Such double attitude is precisely what this contract under the claimant's contention permits, which no refinement of reasoning can escape. If this contract can be upheld as a mere consignment of goods to a factor to sell as the agent for the principal, it must result that if in the contract the sender designates himself as consignor and the sendee as agent or factor, with a stipulation that the title to the property shall remain in the sender, and that the sendee shall sell at least one-third for cash at a fixed price and return the proceeds to the consignor, and all time notes indorsed by him to the consignor, he may by the same authority provide that at the end of 30 days all goods on hand shall, at the option of the so-called consignor, be paid for in cash at a fixed price by the so-called consignee, or even in a shorter time, without having such contract acknowledged and recorded under the statute; and if the consignee, when the time comes, is put into bankruptcy, the consignor can claim a consignment merely on commission, and reclaim the goods. Under such an arrangement the consignee has

but one option, and that is to sell at once for cash or at a short date to pay in cash for all the goods on hand. Such a subterfuge can never receive my sanction.

As a dernier ressort the petitioner, as if conscious of his doubtful attitude, after the filing of the petition in involuntary bankruptcy and the goods were taken charge of by the receiver in bankruptcy under order of the court, caused his contract to be recorded; and it is insisted that, as this was done prior to the adjudication in bankruptcy, it saved the petitioner's rights under the statute. If the law accord to the petitioner such a locus pœnitentiæ, it would be a sufficient answer to the act that it does not appear that the contract was ever acknowledged or proved, without which it was not admissible to be either filed or recorded. But, even had it been acknowledged or proved, it would be a post mortem performance. Aside from the legal effect of the filing of the petition in bankruptcy, the property in question was in custodia legis, in the actual possession of the court's receiver. The rights of the petitioner and the creditors had then a fixed status, which no subsequent act of the claimant could add to or take from.

This same claimant presented to this court for its consideration and construction one of its contracts, little different in essential qualities from the one at bar. That case is styled "In re Rabenau," reported (D. C.) 118 Fed. 471, wherein the attempted evasion of the Missouri statute in question was rejected. Without appealing to have that ruling reviewed, this concern persists, with some change in form, but not in substance, in refusing to place of record its contracts. In my judgment it presents an apt instance of the application of the wholesome rule applied by Judge Thayer, speaking for the Court of Appeals in Davis & Rankin B. & M. Co. v. Jones, 66 Fed. 124, 126, 14 C. C. A. 30, where, considering the construction of a contract about which there had been litigation and a diversity of opinion as to its purport before the one in suit was acted on, it is said:

"Under these circumstances, it was the duty of the plaintiff to alter the form of its contracts then in use, so as to avoid the question whether it imposed a joint or a several liability, which had theretofore given rise to conflicting decisions. Not having done so, the plaintiff cannot complain if the courts adopt a construction of the contract which is most favorable to the defendants."

Deeply impressed, as I am, with the fact of the persistent purpose of this petitioner to evade, by mere jugglery of forms and expressions, the declared public policy of the state in enacting section 3412 of the Revised Statutes of 1899, I feel constrained to hold that the referee properly rejected this claim.