**618**

**In the Matter of MIDWEST GAS COM-
PANY, a corporation, Bankrupt.
No. 2717.**

United States District Court
W. D. Missouri, S. D.
June 26, 1959.

Miller, Fairman & Sanford, Spring-field, Mo., for petitioners.

Wear & Wear, Springfield, Mo., for receiver.

R. JASPER SMITH, District Judge.

Petition for Review of the Referee's action on Alternative Petitions for Reclamation of Texas Tank, Inc. and Dallas Tank Company, Inc.

The facts as found by the Referee are substantially as follows:

Each of the petitioners is a Texas corporation engaged in the business of manufacture and sale of propane gas storage tanks, and as such they entered into certain agreements entitled "Consignment Agreement" with the bankrupt. The terms of the agreement of each petitioner, for all practical purposes, are the same.

The agreement of Dallas Tank Company, Inc. was for a term of ninety days, commencing November 18, 1957, and covering ten 500-gallon propane tanks. Four of these ten tanks remained on the bankrupt's premises following bankruptcy, and possession was taken by the tank company by agreement with the trustee and sold with the understanding that the

proceeds thereof, in the event the matter was decided adversely to the company, would be paid into the bankrupt's estate. The other six tanks had been placed in operation by the bankrupt with customers of the bankrupt.

The agreement of Texas Tank, Inc. was for a term of two months, commencing September 29, 1957, and covering fifteen propane tanks. Although the two-month term had expired, it had been extended as was customary in the trade. Nine of the tanks were sold by the bankrupt, including two of the 500-gallon tanks for which a price of $440 was received by bankrupt. This amount was never received by petitioner, for the reason that the bankrupt's check was returned marked "insufficient funds". The six remaining tanks were taken into possession by the petitioner on February 17, 1958, the same day the receiver qualified.

After describing the property covered, the agreements in substance required the bankrupt as consignee to pay all freight and insurance, to pay all taxes, and to keep the proceeds of the sale of any item from the stock of the tank companies as their property and be held for their benefit until full settlement therefor was made in cash. The bankrupt was given absolute right of sale. In case any of the stock was returned to the consignor it had to be sent freight prepaid. If any stock was not sold, after the term of the agreement, at the option of the consignor, it might be charged to consignee at consignor's current net prices. The agreement further provided that the term "sale" or "sales" should also mean any conversion or attempt at conversion to its own use by the consignee or its agents and customers or otherwise placed in service.

Except for a difference in the life of the agreements and some slight differences in paragraph (8), immaterial here, both agreements are the same.

The Referee concluded that under the terms of the agreements themselves, there being no testimony offered in connection with the various petitions, the agreements in law are conditional sales contracts, and not being recorded, they are void as to the trustee in bankruptcy under the provisions of Section 428.100, V.A.M.S., and Section 70 sub. a and sub. c of the Bankrupt Act, 11 U.S.C.A. § 110, subs. a, c. The Referee predicates this upon the fact that the consignor in those agreements has the sole option as to whether or not the agreement shall be considered a consignment or sale, basing his decision largely on Bradley, Alderson & Co. v. McAfee, D.C., 149 F. 254, and cases cited therein.

For the reasons hereinafter given, I am of the opinion that the Referee's decision cannot stand.

Bradley, Alderson & Co. v. McAfee, supra, is one of a series of opinions written by Judge Philips of this Court in the early part of this century, commencing with In re Rabenau, D.C., 118 F. 471, followed by John Deere Plow Co. v. McDavid, the district court opinion being incorporated in the Court of Appeals opinion at 8 Cir., 137 F. 802, and culminated by Bradley. All of them covered substantially the same issue, and all of them were calculated in substantially the same language. Only John Deere Plow Co. was appealed. In that case Judge Philips was reversed, and in Bradley he sought to distinguish between that case and John Deere Plow Co. The distinction made by him is not persuasive. He attempts to read a distinction between Bradley and others, in that the agreement in Bradley apparently gives the consignor the option to take the property back or to require payment for it under certain conditions.

Paragraph 6 of the present agreement provides in part:

"Any portion of the stock not sold by the consignee or returned to Texas Tank, Inc. within two (2) months after delivery may be charged, *at Texas Tank, Inc. option* to the consignee at Texas Tank, Inc. current net prices and such amount shall be then due and payable to Texas Tank, Inc." (Italics supplied).

The Bradley contract provided in part [149 F. 259]:

"Any and all goods of the respective kinds on hand at these dates (referring to the antecedent date, which would have been July 1, 1906) the said party of the second part agrees to purchase, and to pay and settle for the same as follows: (setting out terms) *at option of the party of the first part,* or, *if party of the first part so elects,* said goods to remain in possession of party of the second part on the basis of this agreement, * * *." (Italics supplied).

In John Deere Plow Co., the contract read [137 F. 804]:

"It is further agreed that this contract is to remain in force unless cancelled and annulled by said first party until Oct. 1st, 1904, at which time said second party agrees *if required by said first party* to return all goods remaining on hand unsold at the expiration of this contract * * *." (Italics supplied.)

It is thus apparent that under all the contracts the option was with the consignor to demand return of the merchandise or receive cash after termination. And to the extent that Judge Philips ruled that this has the effect of converting the instrument into a conditional sales contract as distinguished from a consignment agreement, the opinion in Bradley cannot be said to be the law in Missouri. Many authorities recognize that an option given the *consignee* converts a consignment agreement into a conditional sales contract, but the converse is not true. This view is reflected in John Deere Plow Co. and In re Bell Motor Co., 8 Cir., 45 F.2d 19, and cases cited in both of them, and in the leading Missouri cases of Globe Securities Co. v. Gardner Motor Co., 337 Mo. 177, 85 S.W.2d 561, 567, and Commercial Credit Co. v. Interstate Securities Co., Mo.App., 197 S.W.2d 1000, 1004. The last two Missouri cases deal with trust receipts, but the philosophy back of their decisions is the same.

I therefore rule that under the two agreements in question here, bankrupt occupied the position of bailee under a consignment agreement; there was no legal requirement that the agreement be recorded; and a conditional sales agreement did not exist. It follows, therefore, that as to petitioner Texas Tank, Inc. the entire prayer for relief contained in its Alternative Petition for Reclamation should be granted.

A somewhat different situation presents itself as to the tanks covered by the Dallas Tank Company, Inc. consignment agreement. Although there is no evidence to assist us, the Alternative Petition for Reclamation indicates that only four of the consigned tanks were in bankrupt's possession at the time of adjudication. As to the four tanks, the petition for reclamation should be sustained. However, I do not understand that petitioner is entitled to preferred status on funds that may have been converted to the bankrupt's use through sale or otherwise and which never came into the hands of the trustee in bankruptcy, either in their original or some substituted form. Clearly the trustee has no interest in tanks which may have been delivered to some customer of bankrupt under its equipment loan agreement, and petitioner's right to pursue the tanks would be in no way subject to the claim of the trustee. At the same time, however, petitioner is not in a position where a preference can be allowed for these conversions, and to that extent the only right of petitioner so far as the bankrupt estate is concerned, is as an unsecured creditor. See John Deere Plow Co., supra.

The order of the Referee must be reversed, with directions to enter an order consistent with the provisions of this memorandum. It is so ordered.