## FROST v. WILLIAMS *et al.*

Plaintiff entered into a written contract with a large number of farmers of McCook county, whereby he agreed to build a cheese factory and run it for three years, and make good cheese for 2 cents per pound, provided he was paid $300 in cash, and good milk was furnished by said farmers; the latter guarantying the plaintiff the above sum of money, and to furnish the milk from the number of cows set opposite their names, for 5 months in each year for three years. Opposite each of the signers' names appeared a specified sum of money, varying from $10 to $50, and the number of cows from which milk was to be furnished, varying from 7 to 25. It also appeared from the allegations of the complaint that each subscriber had paid of the aggregate sum of $300 certain amounts of money, which had been received and

accepted by the plaintiff; these amounts being generally in proportion to the several sums set opposite their names. *Held*, that the subject matter of the action, the amounts of money set opposite the several names, and the allegations of the complaint, show it was the intention of the parties that it should be a several, and not a joint, contract.

(Syllabus by the Court.  Opinion filed January 21, 1892.)

Appeal from circuit court, McCook county. Hon. FRANK R. AIKENS, Judge.

Action on written agreement. Judgment for defendants. Plaintiff appeals.  Affirmed.

The facts are fully stated in the opinion.

*U. S. G. Cherry* for appellant.

Whenever a liability, resting upon two or more persons, is created by contract, the presumption is that such liability is joint. Pom. Rem. and Rem. Rights, § 275; 1 Pars. Cont. 11; 1 Addison Cont. 47; §3574 Comp. Laws; McCullis v. Thurston, 27 Vt. 597; Sheppard's Touchstone, 375; People v. Hartley, 21 Cal. 585.    Defendants waived their right to object to the joinder of all the defendants in one action.  Comp. Laws. § 4909, 4912; James v. Wilder, 25 Minn. 305; Hellene v. Heilbron, 71 Cal. 557; Heir v. Staples, 51 N. Y. 137; Blossom v. Barrett, 37 Ind. 434; Eldridge v. Bell, 12 How. Pr. 547.   The statute gives plaintiff the option to join persons severally liable upon the same obligation in the same action.   Comp. Laws § 4880; Pom. Rem. and Rem. Rights, § 278.  If liable for separate sums by the same instrument a separate judgment should be entered against each.   Pom. Rem. and Rem. Rights. §§404–406; Carmen v. Plass, 23 N. Y. 286; Cridler v. Curry, 44 How. Pr. 345; Clegg v. Am. Newspaper Un., 60 Id. 498; Thomas v. Anderson, 58 Cal. 99; People v. Love, 25 Id. 521, Powell v. Powell, 48 Id. 234.  Though plaintiff complains of defendants jointly, he may recover against them severally.   Decker v. Trilling, 24 Wis. 610. Neil v. Clifford, 55 Id. 167; Niles v. Battershaw, 27 How. Pr. 381; Hier v. Staples, 51 N. Y. 136.

*Keith & Bates* and *E. H. Wilson* for respondents.

The intention of the parties governs the construction of a

contract. Boss v. Vellum, 11 N. W. 65; Title 3, Chap. 5, Comp. Laws; 2 Pars. Cont. p. 513; Browning v. Beston, Plowd. 140. The contract in the case at bar is several. Davis v. Belford, 37 N. W. 919; Dwelley v. Dwelley, 10 N. E. 468; Landwerlen v. Wheeler, 3 W. R. 639; Bish. Cont. § 575; Irwin v. Opp., 1 W. R. 919; 1 Wait Act. and Def. 116; Add. Cont. 86; Railroad v. Bailey, 24 Vt. 465; Railroad v. Patrick, 2 Abb. App. 72; 1 Wood's Railroads 57; Price v. Railroad, 18 Ind. 137.

BENNETT, J.   This was an action against the defendants, based upon the following written agreement:

"This agreement, made   *   *   *   between A. W. Frost, party of the first part, and the undersigned farmers of McCook county, parties of the second part, witnesseth, that for the consideration of three hundred dollars, to be paid to said first party by said second parties, said A. W. Frost agrees to build a cheese factory on the S. W. ¼ of S. W. ¼ sec. 33—104—53, and run said factory for three years, if said money is paid on or before October 15, 1886, or as soon thereafter as said frame for said factory is up, and guaranties to make good cheese at two cents per pound for the three years, provided good milk is furnished, the maker to be the judge of the milk, and cheese to be boxed and ready for market. And we, the undersigned farmers of McCook county, Dakota, guarantee the said A. W. Frost the above named sum of money, and to furnish the milk from the number of cows set opposite our names for five months each year for three years, commencing from the 1st to the 15th of May in each year, as may be agreed upon. In witness whereof we have hereunto set our names this 4th day of September, 1886.

A. W. Frost.

| | | | |
|---|---|---|---|
| J. Wiliiams | $50 00 cash. | 25 cows. | |
| F. E. Smith | 10 00 " | | |
| A. O. Johnson | 20 00 " | 12 " | |
| J. J. Stults | 15 00 " | 10 " | |
| M. Davenport | 20 00 " | 10 " | |
| C. F. Davenport | 25 00 " | 15 " | |
| John Sullivan | 10 0 ' " | | |
| Andrew Brady | 10 00 " | | |
| E. D. Walker | 20 00 " | 20 " | |

| J. J. Myles | 10 00 | " | 10 | " |
| E. Foote | 15 00 | " | 15 | " |
| Jas. Hutchinson | | | 7 | " |
| Elmer DeGood | 10 00 | " | 7 | " |
| William Zimmerman | | | 15 | " |
| Oliver Odell | | | 20 | " |
| F. W. Lander | 10 00 | " | 10 | " |
| C. C. McCreary | 10 00 | " | 10 | " |
| John Berry | 10 00 | " | | |
| J. D. Hutchinson | 10 00 | " | 10 | " |
| H. Cooper | 10 00 | " | 10 | " |

The complaint alleged full performance on the part of plaintiff, nonperformance by defendants, and consequent damage to plaintiff. An answer was filed, denying the material allegations of the complaint, and alleging fraud in obtaining the contract. At the trial of the cause the defendents objected to any evidence being given on the part of the plaintiff, for the reason that the complaint does not state a joint cause of action against the defendants; that the action is founded on a written contract, and that contract itself limits the liability of each person who signed it; and that there is no joint liability between the defendants; and that the plaintiff cannot recover in the action. This objection was sustained, the complaint dismissed, and judgment for costs was rendered against the plaintiff. From the judgment dismissing the complaint this appeal is taken.

The assignment of errors raises but one question for determination, viz.: Did the court err in sustaining the objection that the complaint does not state a joint cause of action against the defendants, and that the written contract upon which the action is brought limits the liability of each person who signed it?" A contract must be interpreted to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful. For the purpose of ascertaining the intention of the parties to a contract, if otherwise doubtful, the language of a contract is to govern the interpretation, if the language is clear and explicit, and does not involve an absurdity. When a contract is reduced to writing, the intention of the parties is to be ascer-

tained from the writing alone, if possible; but the whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the others.    Sections 3551, 3553, 3556, Comp. Laws.    If the mutual intention of the parties to this written contract can be ascertained from the writing, it must be done, and, when so ascertained, that intention must govern their respective liabilities under it.    The contention of the appellant that the contract is joint rests upon the following words to be found in it, viz: "We, the undersigned farmers of McCook county, Dakota, guaranty the said A. W. Frost the above named sum of money, and to furnish the milk from the number of cows set opposite our names five months in each year for three years."   These words, of themselves, are not sufficient to settle the interpretation that should be given to them.   As will be seen from the above quotation from the statutes, the cardinal rule of construction is that contracts shall be so interpreted as to arrive at and carry out the intention of the contracting parties, and with that view the whole of it is to be taken together, so as to give effect to every part, and each clause must help to interpret the others.   If the contract read:   "We, the undersigned farmers,   *   *   *   guaranty to pay the amount set opposite our names in cash, and to furnish the milk from the number of cows set opposite our names,"—there would be no doubt that the contract would be several, and that each subscriber, and he alone, would be liable for the sums and the quantity of milk promised opposite his name.   As respects the agreement to furnish the milk, it is clear that it was a several liability.   The only question of doubt rests upon the agreement as to the payment of the $300.

Another elementary rule of interpretation of contracts is that "a contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates."   Civil Code, (Comp. Laws,) § 3554.   In the case before us we have none of the facts or circumstances surrounding the making of the contract, except as is shown in the complaint.   Paragraph 3 of the complaint avers that over one-half

of the sum of money has been paid, and then it states by whom paid,—$35 by J. Williams, $10 by F. E. Smith, $20 by A. O. Johnson, and so on—admitting that each signer paid individually in accordance and in proportion to the amount he had set opposite his name at the time of signing. These facts tend to show that it was understood both by the subscriber and the recipient that each one was only to pay in accordance with the amount set opposite his name.

The case of Price v. Railroad Co., 18 Ind. 137, is somewhat analogous to the one at bar. It was an action brought upon a contract or subscription for stock to the railroad. The contract read as follows:

"We, the undersigned, promise to pay to the president and directors of the Grand Rapids & Indiana Railroad $25 for each share set opposite each of our names, in such manner and proportion, and at such times as they may direct. Witness our hands," etc.

| "Names, | Shares. | Amount. |
|---|---|---|
| Francis M. Price...................................................... | 40 | $1,000 |

The court, in interpreting this contract, says: "These stock subscriptions, though in form joint contracts, are intended to be, and are to be treated as, several, and each stockholder as liable simply for the amount opposite his own name. They are to be interpreted thus: "We, the subscribers, promise to pay the sum set," etc., as subscribed. "I, Francis M. Price, promise to pay 40. I, John Gilpin, promise to pay 10," etc. The words, set opposite each of our names," constitute the main difference between that subscription and the contract under consideration. With this difference the one is the same as the other. In the body of the contract before us there is no statement as to the amount which each promises to pay, but opposite each name are the amounts subscribed by the different persons. These amounts vary from $10 to $50, as each one felt inclined to contribute towards the enterprise; not alone in money, but as to the quantity of milk to be furnished by each. Taking the whole contract together, and not separating out particular clauses of it, and giving effect to every part, we

think the intention of the parties at the time of making it is clear and plain. It is not a contract whereby Frost, party of the first part, agreed to build for the parties of the second part a cheese factory for $300, that, when completed, should be the property of these "undersigned farmers." The wording of the contract imports no such meaning. It is to build a "cheese factory," to be run, operated, and owned by the said Frost. The only binding obligation on him after it is constructed is that from the milk which is furnished by each signer he is to manufacture good marketable cheese for two cents per pound. This inference is strengthened by a further reference to the allegation in the complaint that "the plaintiff (Frost) built and constructed said cheese factory, and purchased machinery proper for carrying on the business of manufacturing cheese * * * and necessarily expended the sum of eleven hundred dollars." It is not a reasonable conclusion to say, then, that this factory was built for these "undersigned farmers," but that, a factory of this kind being desirable in the neighborhood and the vicinity where these farmers were living, they were willing to aid in its construction by contributions towards its erection, the benefit arising to them from the increased facilities which it would afford them for manufacturing their surplus milk into marketable cheese. Hence we say that the contract, the subject matter of it, and the allegations of the complaint clearly indicate that the signers, as far as these "farmers" were concerned, were willing to contribute to a $300 fund in cash to be given to the plaintiff as a bonus for the purpose of having a cheese factory built at a certain place, and within a certain time. While the aggregate fund should be $300, yet each one, as he signed his name to the contract, limited his liability to the amount set opposite his name, varying according to the ability or desire of each subscriber to that fund, and without any intention on either the part of the donor or the recipient that either one was expected to pay or be held liable for any other one's promise, or for more than was opposite his own name. When a person signed the paper and put opposite his name the amount subscribed, he just as plainly declared that

that was the amount for which he was liable as if in the body of the paper it had been stated that each subscriber was to be only liable for the amount opposite his name. We think it would be doing violence to the rules of interpretation and the manifest intention of the contracting parties, as plainly indicated, to hold that the person who subscribed $10 to the fund is liable for the whole amount.

The case of Davis v. Belford, (Mich.) 37 N. W. Rep. 919, was an action brought by the plaintiff against the defendants, 42 in number, charging them jointly upon a contract, the essential parts of which are as follows: "We, Davis & Rankin, parties of the first part, agree with the parties of the second part to erect and put in operation a creamery at or near Holly, Oakland county, Michigan; * * * said Davis & Rankin agree to erect said creamery according to the within plans and specifications for the sum of $4,500, payable as follows: $2,250 cash; $2,250, May 16, 1886. The subscribers hereto agree to pay the above amount for said creamery when completed; the subscribers agreeing to accept the same as soon as completed according to within plans and specifications. Said creamery to be completed within 60 days after the above amount is subscribed. All payments under this contract to be made to Davis & Rankin, or their authorized agent." The contract then provided for the incorporation of the subscribers, and the division of stock, etc. This contract was subscribed by the names of all the defendants, and opposite their names appeared the amount of each individual subscription, varying in amount from $25 to $800 each The sole contention in the case was as to whether the contract was a joint or several contract. The cause was tried before a jury, which, under the direction of the court, returned a verdict in favor of defendants, and the plaintiff brought error to the supreme court. The court say: "We think the court was correct in his construction of the contract, and properly directed the verdict. The law for the construction of contracts is well settled in Dwelley v. Dwelley, (Mass.) 10 N. E. Rep. 468: 'In the construction of contracts the court will look at all the circumstances of the case, the nature of the

property, the usages of the place and of the business to which the contract relates; and ascertain, by reasonable inference, what the parties must have understood and mutually expected at the time of making the contract, and adopt that construction which will best and most nearly carry the contract into effect as they intended and understood it.' Applying this rule to this contract, there is no difficulty in reaching the conclusion arrived at by the learned circuit judge who heard the case. The defendants were 42 in number, and presumably following different occupations, trades, and businesses, scattered over a considerable extent of territory at and near Holly, Oakland county, Michigan, * * * some of the defendants subscribing $25, and others amounts of $50, $100, $200, and one the sum of $800. The amount to be recovered was $4,500. Is it to be presumed from the reading of the contract that, when one placed his name there for $25, he at once became liable to plaintiffs for the whole $4,500, the balance of which had not yet been subscribed. and the persons who were to make up the balance wholly unknown to the first subscriber? Or is it to be presumed from the reading of the contract that the first subscriber became liable for the amount subscribed by each additional one, whoever that subscriber might be, and for whatever amount he might subscribe? * * * We cannot believe the defendants could have so understood the language employed in the contract; and from the circumstances surrounding the case, and the conduct of the plaintiffs and their agents, both before and after the execution, it would seem that they did not so construe it." See, also, Landwerlen v. Wheeler, 106 Ind. 523, 5 N. E. Rep. 888. The contention of the appellant in the case at bar is principally based upon the ruling of the supreme court of Vermont in the case of McCullis v. Thurston, 27 Vt. 597. The foundation of that action was a bond, whereby several persons obligated themselves to indemnify McCullis as bailee for a prisoner in custody of the law. The case is in no respects analogous to the one at bar. The circumstances, the nature of the obligation, the relation of the parties, and the subject mat-

ter of the contract are very different.   The construction to be placed upon the liability of several persons as principal and surety, or when two or more are liable for the same debt or demand, is governed by a different rule.   A contract may consist of many parts, and these may be considered as parts of one whole, or as so many distinct contracts, entered into at one time, and expressed in the same instrument, but not thereby made one contract.   So, with the contract under consideration, it con·sisted of as many distinct contracts as there were signers, but, it being expressed in one instrument, must be held to be severable.   No error appearing in the ruling of the court below its judgment is affirmed.   All the judges concurring.