2003 SD 7

**Robert E. NELSON, Plaintiff and Appellant,**

v.

**Donald A. SCHELLPFEFFER, Defendant and Appellee.**

**No. 22117.**

Supreme Court of South Dakota.

Considered on Briefs April 23, 2002.

Decided Jan. 15, 2003.

Kent R. Cutler and Michael D. Bornitz of Cutler, Donahoe & Mickelson, Sioux Falls, South Dakota, Attorneys for plaintiff and appellant.

William G. Taylor and Daniel J. Harmelink of Woods, Fuller, Shultz & Smith, Sioux Falls, South Dakota, Attorneys for defendant and appellee.

TIMM, Circuit Judge.

[¶ 1.] This is an appeal from a judgment crediting a payment received by Robert E. Nelson (Nelson) from Sunshine Partners Limited Partnership (Sunshine) against an obligation Donald A. Schellpfeffer (Schellpfeffer) owed Nelson under a separate agreement (Agreement). We affirm.

[¶ 2.] Schellpfeffer is one of two general partners and a limited partner in Sunshine. Sunshine was organized for the purpose of acquiring and eventually selling a certain parcel of commercial real estate in Tucson, Arizona.

[¶ 3.] In late 1989 Schellpfeffer approached Nelson, soliciting investment in Sunshine. Nelson was reluctant. Schellpfeffer offered to eliminate Nelson's risk by promising to repay him the amount of his Sunshine investment together with twelve percent interest per annum on demand. Nelson accepted. The Agreement was reduced to writing and signed by the parties. It reads:

## AGREEMENT

This Agreement is made and entered into this 30th day of January, 1990, by and between Robert E. Nelson, M.D., a resident of Minnehaha County, South Dakota, his heirs, successors, and assigns (Nelson) and Donald A. Schellpfeffer, a resident of Minnehaha County, South Dakota, his heirs, successors, and assigns (Schellpfeffer).

## RECITALS

The parties agree to the following facts:

A. Schellpfeffer is a general partner in Sunshine Partners Limited Partnership, a South Dakota limited partnership (the Partnership).

B. Nelson has been furnished with a copy of the Private Offering Memorandum dated July 17, 1989, in connection with the Partnership (the Offering Memorandum).

C. Schellpfeffer has solicited Nelson to become a limited partner in the Partnership.

D. Certain representations and warranties were made by Schellpfeffer to Nelson in order to persuade Nelson to purchase limited partnership interests in the Partnership other than were contained in the Offering Memorandum.

E. On the 11th day of November, 1989, Nelson subscribed for the purchase of four units in the Partnership and paid $62,562.40 as required for the initial subscription payment. There are additional capital contributions and potential capital calls as detailed in the Offering Memorandum that may be due and owing by Nelson to the Partnership arising from the purchase of four units in the Partnership.

F. Schellpfeffer has agreed to indemnify Nelson in regard to his investment in the Partnership on certain terms and conditions as hereinafter are described.

G. Schellpfeffer and Nelson agree that Nelson would not have invested in the Partnership without Schellpfeffer's guarantee of payment as provided in this agreement.

IT IS MUTUALLY AGREED AS FOLLOWS:

1. At any time on or after January 1, 1993, if Nelson makes a written demand upon Schellpfeffer pursuant to this agreement, Schellpfeffer agrees to pay to Nelson all of Nelson's Cash Capital Contributions (as that term is defined in the Partnership Agreement in the Offering Memorandum) that Nelson has paid to the Partnership from the 11th of November, 1989, to the date of the demand. Schellpfeffer agrees to pay such sum with interest at the rate of 12% per annum from the date of payment by Nelson of such Cash Capital Contributions to the date of payment by Schellpfeffer. Schellpfeffer agrees to pay the sums due and owing as provided in this agreement within 30 days after receipt of such demand.

2. Notwithstanding the demand that may be made by Nelson upon Schellpfeffer as provided in paragraph 1, Nelson shall be entitled to retain all distributions, profits, and losses that he has received from the time that he became a limited partner until the payment made by Schellpfeffer as provided in paragraph 1.

3. In the event that Schellpfeffer is required to pay the monies due and owing under this Agreement, Nelson agrees to transfer all of his interest in his limited partnership units to Schellpfeffer with all benefits, terms, conditions, and liabilities arising therefrom after the date of payment by Schellpfeffer. In addition, Schellpfeffer agrees to bear all expenses involved in the transfer of the interests of Nelson to Schellpfeffer as substituted limited partner.

4. Nelson agrees to execute any and all documents to effect the transfer of the limited partnership units to Schellpfeffer from Nelson as provided in this agreement upon the receipt of the payment required by this agreement.

5. This agreement shall be controlled by the law of the State of South Dakota. Any dispute arising from this agreement shall be venued in Minnehaha County, South Dakota.

[¶ 4.] Over the course of several years Nelson's capital cash contributions to Sunshine grew to $197,000. Although Nelson was aware of the pending sale of a substantial portion of the Sunshine property in Tucson, on June 28, 1999 he made written demand of Schellpfeffer pursuant to paragraph one of the Agreement. Thirty days passed without payment. Nelson then sued Schellpfeffer.

[¶ 5.] In answer to Nelson's complaint, Schellpfeffer raised, as an affirmative defense, that substantial sums were being held in escrow by Sunshine which, when released, would reduce the amount he owed Nelson. In December 1999, Sunshine issued a check to Nelson in the amount of $110,057.96, his share of the proceeds from the sale of Tucson property.

[¶ 6.] This case was tried piecemeal to the court in February, April, and July 2001. The only issue was whether Schellpfeffer's obligation to Nelson under the Agreement should be reduced by the payment Nelson received from Sunshine. The trial court found in Schellpfeffer's favor, concluding that to allow Nelson to collect his capital cash contributions in full from

Schellpfeffer and to keep the $110,057.96 return of capital from Sunshine would be "unfair ... unreasonable ... and unconscionable," and contrary to the intent of the parties.

[¶ 7.] The issue Nelson brings before this Court on appeal is whether the trial court erred in its interpretation of the Agreement. Contract interpretation is a question of law and the matter is reviewed here anew. *AFSCME v. Sioux Falls School Dist.,* 2000 SD 20, 605 N.W.2d 811; *Hayes v. Northern Hills General Hosp.,* 1999 SD 28, 590 N.W.2d 243.

[¶ 8.] The goal of contract interpretation is to see to it that the mutual intent of the parties is carried into effect. *Singpiel v. Morris,* 1998 SD 86, 582 N.W.2d 715. The contract is to be read as a whole, making every effort to give effect to all provisions. *Crowley v. Texaco, Inc.,* 306 N.W.2d 871 (S.D.1981). When the words of a contract are clear and explicit and lead to no absurd consequences, the search for the parties' common intent is at an end. *Frost v. Williams,* 2 S.D. 457, 50 N.W. 964 (1892); *Giddings v. Nefsy,* 51 S.D. 73, 212 N.W. 507 (1927).

[¶ 9.] Reading the Agreement as a whole it is clear the parties intended that:

1. Schellpfeffer would indemnify Nelson against loss, guaranteeing the return of his Sunshine investment with interest;

2. When Nelson's investment became liquid at the end of three years, Schellpfeffer was obligated, on demand, to pay Nelson the amount he had invested in Sunshine plus 12 percent interest; and

3. Upon Schellpfeffer's cashing Nelson out of Sunshine, Schellpfeffer would acquire Nelson's partnership interest.

[¶ 10.] Nelson focuses our attention on paragraph two of the Agreement. He points out that he has a right to retain "all distributions, profits, and losses that he has received from the Partnership" until payment from Schellpfeffer is made under paragraph one. The term "distributions," Nelson contends, includes return of capital from Sunshine. Because Sunshine returned $110,057.96 of Nelson's investment to him before Schellpfeffer paid Nelson under paragraph one, Nelson reasons that the Agreement gives him the right to retain the Sunshine payment and have the entire amount invested in Sunshine ($197,-000) plus 12 percent interest paid to him by Schellpfeffer.

[¶ 11.] The American Heritage Dictionary, 4th ed (2000) defines "distribution" as "something distributed; an allotment." The payment from Sunshine to Nelson clearly falls within the literal definition of distribution.

[¶ 12.] However, this Court is constrained from interpreting a contract literally if doing so would produce an absurd result. *Frost* ("an absurdity"), 2 S.D. at 460, 50 N.W. at 965. An absurd result is one that is "ridiculously incongruous or unreasonable;" a result that the parties, presumed to be rational persons pursuing rational ends, are very unlikely to have agreed upon. The American Heritage Dictionary, 4th ed (2000); *Beanstalk Group, Inc. v. AM General Corp.,* 283 F.3d 856 (7th Cir.2002).

[¶ 13.] In this case, if we adopt the literal meaning of "distributions" we must conclude that the parties intended that Schellpfeffer would pay Nelson $197,000 plus 12 percent interest even if Sunshine returned his investment in whole or in part. Concomitantly we would have to conclude that the parties intended that Schellpfeffer, under these circumstances, would acquire Nelson's virtually worthless partnership interest. The Agreement is transformed into a mere demand note, callable at the whim of Nelson. This inter-

pretation of the contract is not reasonable: it is absurd.

[¶ 14.] An interpretation which gives a reasonable and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable or of no effect. Restatement 2d *Contracts*, § 203(a). Here, a reasonable interpretation, consistent with the stated purpose of the contract, is that the term "distributions" is not inclusive of capital returned from the partnership to Nelson. The parties sought to take the risk out of the investment for Nelson, not to have any partnership capital returns doubled by Schellpfeffer. Schellpfeffer pays Nelson $197,000 plus 12 percent interest, with credit for the $110,057.96 paid Nelson by Sunshine. Nelson suffers no loss. This makes sense.

[¶ 15.] Even if we were to find that the term "distributions" is reasonably capable of being understood as both excluding and including return of capital from the partnership, thereby demonstrating ambiguity, the evidence in the record solidly supports the conclusion that the trial court's decision was not clearly erroneous.

[¶ 16.] The judgment is affirmed.

[¶ 17.] GILBERTSON, Chief Justice, and ZINTER, Justice, and AMUNDSON, Retired Justice, and VON WALD, Circuit Judge, concur.

[¶ 18.] TIMM, Circuit Judge, for SABERS, Justice, disqualified.

[¶ 19.] VON WALD, Circuit Judge, for KONENKAMP, Justice, disqualified.

[¶ 20.] MEIERHENRY, Justice, not having been a member of the Court at the time this action was submitted to the Court, did not participate.