#25026-r-SLZ

**2009 SD 88**

IN THE SUPREME COURT

OF THE

STATE OF SOUTH DAKOTA

* * * *

CASEY RANCH LIMITED PARTNERSHIP
(CRLP), MILLIRON BISON COMPANY,
LLC (MBC), KEVIN CASEY, as CRLP
General and Limited Partner and
MBC Member, BRENDAN CASEY, as MBC
Managing Member and CRLP Limited
Partner, DENNIS CASEY, as CRLP
Limited Partner and MBC Member,
and SEAN CASEY, as CRLP Limited
Partner and MBC Member,                          Plaintiffs and Appellants,

  v.

PAULINE CASEY,                                   Defendant and Appellee,

  and

MIKE CASEY,                                      Intervener and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

* * * *

HONORABLE JANINE KERN
Judge

* * * *

CONSIDERED ON BRIEFS
ON AUGUST 24, 2009

OPINION FILED **09/23/09**

MICHAEL C. LOOS
COURTNEY R. CLAYBORNE of
Clayborne, Loos, Strommen & Sabers, LLP
Rapid City, South Dakota

Attorneys for plaintiffs
and appellants.


LON J. KOURI
DAVID A. PFEIFLE of
May & Johnson, P.C.
Sioux Falls, South Dakota

Attorneys for appellee,
Pauline Casey.


GARY D. JENSEN of
Beardsley, Jensen and Von Wald, LLP
Rapid City, South Dakota

Attorneys for appellee,
Mike Casey.

#25026

ZINTER, Justice.

[¶1.] Casey Ranch Limited Partnership (CRLP) and Milliron Bison Company, LLP (MBC) commenced this breach of contract action against Pauline Casey. The suit was based on oral agreements under which Pauline leased CRLP's and MBC's real property and agreed to pay for certain expenses associated with her use of the property to graze her cattle. The circuit court dismissed. With respect to MBC, the court concluded that the suit was outside the ordinary course of partnership business; that actions outside the ordinary course of business required unanimous consent of the partners; and, not all partners had consented to the suit. With respect to CRLP, the court concluded that the partnership agreement required a majority of the general partners to act and one of the two general partners had not consented to the suit. CRLP and MBC appeal. We reverse.

*Facts and Procedural History*

[¶2.] This dispute involves the Casey family children, partners in CRLP and MBC, and their mother Pauline Casey. In 1959, Dennis P. "Doc" Casey married Pauline. They had seven children: Kevin, Dennis, Brendan, Sean, Shannon, Mike, and John. In 1972, Doc and Pauline started Bear Country USA, Inc. (Bear Country), a drive-through wildlife park in Rapid City, South Dakota. Doc Casey operated this business until his death in 2000. Doc and Pauline's children were also involved in the ownership and operation of Bear Country. Before the filing of this suit, a conflict had apparently developed among the Casey children and a declaratory judgment action was initiated regarding the corporate governance of Bear Country. Although the outcome of that action has no legal significance in this

-1-

litigation, it appears that the family split evidenced in that action has carried over into this litigation.

[¶3.]        This suit involves two ranches owned by the Casey children.  In 1998, the seven Casey children formed MBC, a limited liability partnership that owns real estate for ranching purposes.  In 1999, CRLP, a limited liability limited partnership, was formed.  Its principal asset is a 5,200 acre ranch.  CRLP was owned and operated by two general partners (Doc and Pauline Casey) and seven limited partners (the seven Casey children).  Upon Doc's death, Kevin Casey succeeded Doc as a general partner.

[¶4.]        This suit arose out of oral cattle grazing leases between Pauline and these two partnerships.  The complaint alleges that Pauline failed to pay amounts due for cattle expenses and lease payments relating to the ranch properties owned by CRLP and MBC.  Pauline and Mike Casey (as an intervenor) moved to dismiss under SDCL 15-6-12(b)(5).  They argued that MBC lacked authority to initiate suit because the suit to collect the debt was outside the ordinary course of business of the partnership, unanimous consent was necessary for extraordinary business, and unanimous consent for the suit had not been obtained.  With respect to CRLP, they argued that Mike Casey was one of two general partners.  They contended that CRLP lacked authority to sue because, under the partnership agreement, a majority of the general partners were necessary to act and Mike did not consent to the suit.  After considering affidavits and other matters outside the pleadings, the circuit court agreed and dismissed.

*Issues*

1. Whether the circuit court erred in concluding that MBC's suit to collect a partnership debt was outside the ordinary course of business thereby requiring unanimous consent of the partners.

2. Whether the circuit court erred in determining that Mike Casey was a general partner of CRLP, and therefore, his consent was required for the partnership to sue.

*Standard of Review*

[¶5.]    Although the circuit court proceedings began on Mike's and Pauline's motions to dismiss, the circuit court considered matters outside the pleadings in rendering its decision.[1]  However, no party objected to the circuit court's consideration of those matters.  Further, in response to the circuit court's expressed skepticism about the procedural posture of the case, the parties assured the court that the case was correctly postured for disposition by summary judgment. Therefore:

> In determining our standard of review, we observe that although this matter is before us on a motion to dismiss, both parties submitted matters outside the pleadings, and the [circuit court] did not explicitly exclude them.  However, we also observe that neither party objected to the [circuit court's] consideration of those matters and neither party raised the issue on appeal. Therefore, we review the [circuit court's] ruling as a motion for summary judgment.  Tibke v. McDougall, 479 NW2d 898, 903-04 (SD 1992) (stating that when the record indicates that matters outside of the pleadings were considered by the trial

---

1.    CRLP and MBC also request this Court to take judicial notice of related dissolution proceedings.  However, because neither party presented arguments regarding dissolution below, we decline to consider those matters on appeal.  "We have repeatedly stated that we will not address for the first time on appeal issues not raised below."  *See* Hall v. State ex rel. S.D. Dept. of Transp., 2006 SD 24, ¶ 12, 712 NW2d 22, 26-27.

court, motions to dismiss are reviewed and disposed of as
motions for summary judgment).

Flandreau Pub. Sch. Dist. No. 50-3 v. G.A. Johnson Const., Inc., 2005 SD 87, ¶ 6,

701 NW2d 430, 433-34.

[¶6.] In reviewing a summary judgment, "we 'restrict our review to

determining whether the record before us discloses any genuine issues of material

fact and, if not, whether the . . . court committed any errors of law.'" *Johnson

Const.*, 2005 SD 87, ¶ 7, 701 NW2d at 434 (quoting Switlik v. Hardwicke Co., 651

F2d 852, 857-58 (3dCir 1981)). Legal questions concerning interpretation of

partnership agreements are reviewed de novo. *In re* Dissolution of Midnight Star

Enters., 2006 SD 98, ¶ 7, 724 NW2d 334, 336 (citing Liechty v. Liechty*,* 231 NW2d

729, 731 (ND 1975)) (noting the agreement is the "law of the partnership").[2]

---

2. Questions concerning what is in the ordinary course of business can be a
mixed question of law and fact. *See In re* National Steel Corp., 351 BR 906,
913 (NDIll 2006) (explaining the standard of review for ordinary course of
business under 11 USC § 547(c)(2)). *National Steel* noted that "[t]he
standards created to define and interpret the phrase 'ordinary course of
business' involve questions of law." *Id.* (quoting Martino v. First Nat'l Bank
of Harvey, 186 BR 414, 421-22 (NDIll 1995)). "However, what transpired
between the parties both in the ordinary course of their business relationship
and in the transactions at issue is a question of fact." *See id.* (citing *Martino*,
186 BR at 422). This Court, in examining SDCL 54-8A-8(f)(2), has also noted
that "[c]ourts must engage in a 'peculiarly factual' analysis" in determining if
a debtor's payments were in the ordinary course of business. Prairie Lakes
Health Care Sys,, Inc. v. Wookey, 1998 SD 99, ¶ 19, 583 NW2d 405, 415
(citing Lovett v. St. Johnsbury Trucking, 931 F2d 494, 497 (8thCir 1991))
(citations omitted).

Nevertheless, the circuit court decided this issue as a matter of law. Even
the circuit court's reference to the family disputes in the Bear Country
litigation does not create a disputed question of *material* fact. The circuit
court specifically stated: "I've laid out the ruling very clearly so you can seek
(continued . . .)

*Analysis*

*1. Authorization for the MBC Suit*

[¶7.]    The circuit court concluded that initiation of this litigation was outside the ordinary course of partnership business, and therefore, it could only be undertaken upon consent of all partners. The circuit court reasoned that the partnership agreement was not controlling and that because the "initiation of this litigation [was] outside the ordinary course of business of the partnership, it [was] . . . subject to unanimous consent requirements under SDCL 48-7A-401(j)." That statute provides:

> A difference arising as to a matter in the ordinary course of business of a partnership may be decided by a majority of the partners. An act outside the ordinary course of business of a partnership and an amendment to the partnership agreement may be undertaken only with the consent of all of the partners.

SDCL 48-7A-401(j).

[¶8.]    On appeal, MBC contends that the circuit court erred because consent to *all* business, whether ordinary or extraordinary, is controlled by the partnership agreement rather than SDCL 48-7A-401(j), and that under the agreement, a mere majority of the partners' interests were necessary to conduct any business.

_____

(. . . continued)

an appeal, if you so desire. It's a question of law." We agree. As a matter of law, the family dispute arising out of the Bear Country litigation is not material to the question we must decide. The only issue argued to be influenced by the Bear Country litigation is whether initiation of MBC's suit to collect a partnership debt from Pauline was not within the ordinary course of MBC business because it was a dispute among partners. Pauline, however, was not a partner in MBC. Therefore, the only material question on appeal is the legal question whether MBC was authorized to sue under the partnership agreement. If the suit was authorized as a matter of law, the motivation for the suit is irrelevant.

Alternatively, MBC contends that the suit was initiated in the ordinary course of MBC business, and therefore, a majority was all that was required under either the partnership agreement or SDCL 48-7A-401(j).

[¶9.]      To resolve these contentions, we first consider MBC's argument that the partnership agreement controls because it authorized *both* ordinary and extraordinary business to be conducted by a simple majority.  We consider MBC's alternative ordinary course of business argument as two questions.  First, was the underlying lease, which gave rise to the debt, made in the ordinary course of MBC business?  If it was, we then determine whether initiation of suit to collect that debt was also in the ordinary course of business.  If commencing suit to collect the debt was within the ordinary course of business, then both the partnership agreement and SDCL 48-7A-401(j) only required a majority to act.

*Section 6.1 of the MBC Partnership Agreement*

[¶10.]     MBC first claims we need not determine whether the lease or filing suit to collect debt under the lease is within the ordinary course of business because *all* business decisions, whether ordinary or extraordinary, are governed by section 6.1 of the partnership agreement and section 6.1 only requires a majority to act.  Section 6.1 provides:

> Each partner shall have a voice in the management of the Partnership business.  Except as otherwise provide[d] in this Agreement, *all decisions relating to the Partnership business* shall be made by a vote of the partners who own a majority in amount of the total capital accounts of all partners.

(Emphasis added.)  MBC asserts that if this partnership provision governs all decisions, whether ordinary or extraordinary, the agreement supplants the default rule in SDCL 48-7A-401(j).  *See* SDCL 48-7A-103(a) ("[R]elations among the

partners and between the partners and the partnership are governed by the partnership agreement.").

[¶11.]    In interpreting partnership agreements, we have stated:

> The partnership agreement is a contract between the partners and effect will be given to the plain meaning of its words. *Liechty,* 231 NW2d at 731; *see also* Pauley v. Simonson*,* 2006 SD 73, ¶ 8, 720 NW2d 665, 668 (noting the contract is interpreted using its language).  "An interpretation which gives a reasonable and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable or of no effect."  Nelson v. Schellpfeffer*,* 2003 SD 7, ¶ 14, 656 NW2d 740, 744 (citing Restatement (Second) Contracts § 203(a) (1981)).  We must "give effect to the language of the entire contract and particular words and phrases are not interpreted in isolation."  Jones v. Siouxland Surgery*,* 2006 SD 97, 724 NW2d 340 (quoting Hartig Drug Co. v. Hartig*,* 602 NW2d 794, 797-98 (Iowa 1999)) (internal quotations omitted).

*Midnight Star*, 2006 SD 98, ¶ 12, 724 NW2d at 337.

[¶12.]    To support its interpretation of section 6.1, MBC focuses only on the "all decisions" language of the section without acknowledging the limiting language indicating that all decisions are only those "relating to Partnership business." Thus, MBC's interpretation reads a part of section 6.1 in isolation without considering all language in this section.  The language "relating to Partnership business" modifies "all decisions."  Therefore, when read as a whole, section 6.1 does not provide that *all decisions*, whether *extraordinary and ordinary*, may be made by a simple majority.  On the contrary, the limiting language requires that "all decisions" must be those *"relating to Partnership business;" i.e.,* ordinary partnership business.  To read the "all decisions" language as contemplating extraordinary matters would render the phrase "relating to Partnership business"

meaningless surplusage.[3] *See* Estate of Fisher v. Fisher, 2002 SD 62, ¶ 14, 645 NW2d 841, 846 ("A contract should not be interpreted in a manner that renders a portion of it meaningless." (citing Bowen v. Monroe Guar. Ins. Co., 758 NE2d 976, 980 (IndCtApp 2001))). Moreover, to read the language as MBC suggests would change the agreement and make extraordinary non-partnership matters ordinary partnership business. "[I]t is not a function of the court to rewrite the parties' agreements." Hisgen v. Hisgen, 1996 SD 122, ¶ 17, 554 NW2d 494, 499 (Amundson, J., dissenting) (citations omitted). We therefore conclude that section 6.1 governs only ordinary partnership business.

*Ordinary Course of Business*

[¶13.]    Having concluded that decisions regarding extraordinary matters were not authorized by majority vote in section 6.1, we must next determine whether the claim against Pauline for breach of contract arose within the ordinary course of MBC business. It appears that the circuit court, based on the "acrimony and bitterness" evidenced in the Bear Country litigation, treated the initiation of this suit as an action among or against partners rather than a suit to collect a partnership debt. However, Pauline Casey was not a partner and had no ownership interest in MBC. Furthermore, the complaint makes no claim regarding

---

3.    MBC's reliance on *J & J Celcom v. AT&T Wireless Services, Inc.*, No. C03-2629P, 2005 WL 1126924, at *9 (WDWash 2005) is misplaced. In that case, the partnership agreement listed different voting requirements for various matters. After listing the matters for which a supermajority or unanimity was required, the agreement then provided for a simple majority "for every other act requiring a vote of the partners." *Id.* This broad residuary language ("every other act") is unlike the limited language ("decisions relating to partnership business") in section 6.1.

partnership governance, no claim of dispute regarding entitlement to partnership assets, and no mention of a dispute among the partners. The complaint only seeks to enforce what is claimed to be a partnership debt owed by a third party.[4]

[¶14.] The asserted debt arose from a real estate lease with Pauline, which was a part of the ordinary course of MBC business. As stated in the "Purpose" section of the MBC Partnership Agreement, Article I, § 1.2:

> [MBC] shall engage in the business of acquiring, owning, improving, operating, managing, selling, *leasing*, or mortgaging *the real property* . . . and otherwise to deal with said property or any other properties . . . *and to do all other acts which may be necessary or desirable in order to accomplish any of the aforementioned purposes.*

(Emphasis added.) Considering the express purpose of MBC, the leasing of the partnership's ranch property for cattle grazing and care was within its ordinary course of business. Therefore, Pauline's obligation under the lease was a partnership debt that arose in the ordinary course of business.

[¶15.] Additionally, initiating suit to collect a partnership debt is generally considered to be within the ordinary course of the business of a partnership. SDCL 48-7A-201 provides that "[a] partnership is an entity distinct from its partners." Partnerships also have authority to sue in the name of the partnership. SDCL 48-7A-307(a). Therefore, commencing a lawsuit on behalf of a partnership to enforce a

---

4. Mike and Pauline mistakenly rely on *Heritage Co. of Massena v. La Valle*, 605 NYS2d 613, 199 AD2d 1036 (NYAppDiv 1993). In that case, the court ruled that filing suit against a *partner* was not in the ordinary course of business. This case involves an action by partnerships against Pauline Casey, a third party, non-partner. Although Mike Casey was a partner who intervened to protect his interests, the complaint does not seek relief from him on the partnership debt.

partnership claim incurred in the ordinary course of business is itself a matter in the ordinary course of business. *See* Lane v. Krein, 375 SE2d 351 (SCCtApp 1988) (treating suit against third parties as an ordinary matter); Delbon Radiology v. Turlock Diagnostic Ctr., 839 FSupp 1388, 1392 (EDCal 1993) ("[E]nforcement of a partnership's claim will often be an ordinary matter and subject to [majority rule]." (quoting Bromberg & Ribstein, *Bromberg and Ribstein on Partnership* § 5.03(c), at 5:20-21 (1991))). *See generally* Alan R. Bromberg, *Enforcement of Partnership Rights – Who Sues for the Partnership?*, 70 NebLRev 1, 10-13 (1991) (same).

[¶16.]     For purposes of summary judgment, it must be assumed that Pauline Casey grazed her cattle on MBC's property and failed to pay amounts due on the governing leases. Considering that one of the purposes of MBC was to lease its ranch property, we conclude that the initiation of the breach of contract action against Pauline Casey, a third party, was within the ordinary course of partnership business. Because the decision to sue was within the ordinary course of business, and because more than 70% of the MBC partnership interests consented to the suit, the suit was authorized under the partnership agreement and SDCL 48-7A-401(j).[5]

---

5.     Mike and Pauline mistakenly rely on *Delbon Radiology* and *Bromberg and Ribstein on Partnership* for the proposition that if all partners have a conflict of interest regarding the claim for which a suit is contemplated, then unanimous consent is required. In *Delbon Radiology* the court nullified a partner's dissenting vote to commence litigation because the partner had a "contractual relationship with and derive[d] income from [the defendant]" outside of his capacity as a partner in the partnership. 839 FSupp at 1392. In this case, there is no assertion that any partner had an extra-partnership contract with Pauline or that any partner derived any extra-partnership benefit from the underlying lease with Pauline. The only suggested "conflict" is the family dispute reflected in the Bear Country litigation. *Delbon* did not suggest that business/family disputes are the type of "conflict" that is

(continued . . .)

For these reasons, the circuit court erred in granting the motion to dismiss as to MBC.

## 2. Authorization for the CRLP Suit

[¶17.]    The circuit court concluded that Mike Casey was one of two general partners and he had not consented to this suit as required by the partnership agreement.  Based on this conclusion, the circuit court dismissed CRLP's claim.

[¶18.]    Upon the death of Doc Casey in 2000, Kevin Casey became one of two general partners of CRLP (Pauline was the other).  In 2006, Pauline decided to gift her interest in CRLP to her seven children (the general and limited partners).  Under the proposed arrangement, Pauline would no longer be a general partner once she transferred her interests in CRLP.  CRLP's counsel at the time advised that a new general partner would be required.  To facilitate these changes, a partnership meeting was held on December 19, 2006.  At that meeting, the partners unanimously voted that Mike Casey would become a general partner (joining Kevin Casey) if Pauline Casey gifted her ownership interest in CRLP to the other partners within one year.

[¶19.]    Pauline gifted her ownership interests in CRLP to the other partners within the required year.  As a result, the December 19, 2006 resolution became

_____

(. . . continued)

necessary to strip the majority partners of MBC of their voting rights under section 6.1.  Further, the Bear Country litigation is not the type of "conflict" discussed in *Bromberg and Ribstein on Partnership*.  *See* Bromberg & Ribstein, *Bromberg and Ribstein on Partnership* § 5.04(b), at 5:29 n2 (1998-2 Supp) (citing cases finding a conflict when a partner had a separate contract with defendant; a partner was an officer of defendant corporation; or, other circumstances inapposite to the purported "conflict" regarding MBC's partners).

effective and Mike Casey became one of the two general partners of CRLP. In accordance with this December 19, 2006 resolution, CRLP continued to operate with Mike and Kevin Casey as general partners. On February 29, 2008, an Amended Certificate of Limited Partnership was filed with the Secretary of State reflecting Mike's status as a general partner.[6]

[¶20.] However, questions subsequently arose among one faction of the Casey children regarding Mike Casey's appointment as general partner. On March 12, 2008, general partner Kevin Casey, along with limited partners Sean, Brendan and Dennis Casey, conducted a CRLP meeting. The minutes of that meeting reflect a concern was expressed that, contrary to the prior legal advice, a replacement general partner was not *required* when Pauline had transferred her interest. Therefore, those partners present at this meeting concluded that Mike Casey should not have been appointed as a general partner. Although not representing the 70% of the partnership interests necessary to remove a general partner, those present voted to remove Mike Casey as a general partner.

[¶21.] The record is not clear whether Mike and Pauline were given notice of this act. Further, the ability to remove a general partner without 70% of the partnership's interests apparently became an issue of concern. Therefore, out of what a July 28, 2008 partnership resolution described as an "abundance of caution,"

---

6.   We decline to consider CRLP's argument that the filing of the Amended Certificate of Limited Partnership reflecting Mike Casey's appointment was untimely and therefore invalid under SDCL 48-7-202. "We have repeatedly stated that we will not address for the first time on appeal issues not raised below." *Hall*, *supra* n 1.

Kevin, Sean, Brendan and Dennis Casey purportedly removed Mike Casey again, this time under a CRLP partnership provision that allowed removal for malfeasance by a simple majority. A copy of the resolution of removal was offered and received without objection by the circuit court. Notwithstanding the resolution, the circuit court concluded as a matter of law that Mike Casey was a general partner whose consent was required.

[¶22.] CRLP advances two arguments supporting its contention that the circuit court erred in concluding Mike Casey's consent was required. First, CRLP argues that the partnership received erroneous legal advice regarding the need to replace Pauline as a general partner. CRLP contends that under the partnership agreement, Pauline was not *required* to be replaced, and therefore, Mike Casey did not become a general partner. Alternatively, CRLP contends that even if Mike became a general partner, he had since been removed for malfeasance.

*Mike Casey's Succession of Pauline Casey as General Partner*

[¶23.] CRLP notes that the partnership agreement defines a general partner as "[t]he Person or Persons designated as General Partners on Schedule A and any successor General Partners *in accordance with the terms of this agreement. . . .*" CRLP Agreement § XVII.V (emphasis added). CRLP points out that the partnership agreement contains specific terms for withdrawal and succession of general partners[7] and places limitations on the transferability of CRLP interests.[8] CRLP contends that because Pauline's interests were not transferred in compliance

---

7.    Under CRLP Agreement § XV.C.2, a new general partner was not required. That section provides:

(continued . . .)

#25026

with these terms, and because a replacement general partner was not required under the agreement, the transfer, withdrawal, and succession was not "in accordance with the terms" of the partnership agreement. Because those terms were not followed, CRLP argues that Mike's election as a general partner was void.

---

(. . . continued)

> If there are multiple General Partners and one or more General Partners withdraw or cease to serve for any reason and there is at least one remaining General Partner, the Partnership *shall* be automatically reconstituted without being wound-up and the *business of the Partnership shall be carried on by the remaining General Partner(s)* without amending this agreement. If a General Partner, serving alone, withdraws or ceases to serve for any reason, then, without amending this Agreement, in the following priority and succession, the following will serve as the successor General Partner: Kevin Casey, Brendan Casey, and Sean Casey ("Designated Successor General Partner"), and the Partnership *shall* be automatically reconstituted without being wound-up and the business of the Partnership *shall* be carried on by the successor General Partner(s).

(Emphasis added.)

8. CRLP Agreement § XII.B.2.b requires pro-rata purchase of a withdrawing general partner's interests by the remaining *general* partners. That section provides:

> The General Partner who is not deceased and commits an act of withdrawal in accordance with SDCL 48-7-402 . . . must sell all the General Partnership Interest of the withdrawing . . . General Partner . . . . The General Partnership Interest must all be purchased by the remaining General Partners pro rata.

Further, assignments of interests "must be in writing, the terms of which are not in contravention of any of the provisions of the Agreement, and the assignment must be received by the Partnership and recorded on the Partnership's books. . . ." CRLP Agreement § XII.A.

-14-

[¶24.]    For purposes of this appeal we may assume that the partnership agreement did not require a replacement general partner upon Pauline's withdrawal. We also assume that the assignment of interest provisions were not followed when Pauline's interests were transferred. We may make these assumptions because the failure to follow these partnership procedures for succession and transfer of interest are immaterial. They are immaterial because, by the December 19, 2006 resolution, the transfer, withdrawal, and replacement procedures were waived by unanimous consent of the partners. At that meeting, in electing Mike Casey and approving the proposed transfer, all partners unanimously adopted the following resolution: "[I]f Pauline gifts all of her partnership interests, such transfers are approved and such transfers *will not constitute a wrongful withdrawal* from the partnership, *or a violation of any part of the Partnership Agreement as pertains to withdrawal* by a General partner, *or otherwise*." (Emphasis added.) Consequently, notwithstanding any inconsistent partnership provisions, Mike Casey's election as an additional general partner was validated by the written, unanimous consent of all partners. *See* SDCL 48-7-401 (stating that additional general partners may be admitted with the written consent of all partners).[9]

---

9.    The CRLP Agreement contemplated transfers by unanimous consent. The agreement restricts ownership and transferability of interests in CRLP stating, "[e]xcept as provided in Section XII.B, neither record title nor beneficial ownership of a Partnership Interest may be transferred without the prior written consent of all Partners ("Required Consent")." CRLP Agreement § XII.A.

(continued . . .)

*Mike Casey's Removal as a General Partner*

[¶25.]      We next determine if Mike Casey was removed as general partner.  In the proceedings below, the circuit court admitted the CRLP removal resolution but the circuit court's decision did not mention the removal issue.  On appeal, CRLP again asserts that Mike Casey was removed for malfeasance and therefore his consent was no longer required.

[¶26.]      As previously noted, the motion to dismiss became a motion for summary judgment.  In a summary judgment proceeding, "[t]he burden is on the moving party to clearly show an absence of any genuine issue of material fact and an entitlement to judgment as a matter of law."  Dakota Indus., Inc. v. Cabala's.com, Inc., 2009 SD 39, ¶ 10, 766 NW2d 510, 513 (quoting Hayes v. N. Hills Gen. Hosp., 1999 SD 28, ¶ 12, 590 NW2d 243, 247).  "While we often distinguish between the moving and non-moving party in referring to the parties' summary judgment burdens, the more precise inquiry looks to who will carry the burden of proof on the claim or defense at trial."  *Id.* ¶ 11 (quoting Zephier v. Catholic Diocese

_____

(. . . continued)

 The CRLP Agreement further provided for permissive admission of new general partners.  The agreement provides:  "Additional General partners may be admitted as provided in Section XV.C."  CRLP Agreement § VI.C.  Section XV.C.2 provides in part:  "Before all multiple General Partners or a sole General partner serving without a Designated Successor General partner withdraw, additional General Partners or Designated Successor General Partners may be appointed by 70 Percent in Interest."  CRLP Agreement § XV.C.2.  Because the unanimous vote at the December 2006 meeting exceeded the 70% requirement, and because Pauline timely assigned her interests, it appears that Mike Casey may have been elected as a general partner under these provisions even without the waiver by unanimous consent.

of Sioux Falls, 2008 SD 56, ¶ 6, 752 NW2d 658, 662). Thus, CRLP, as the party affirmatively asserting Mike's removal for malfeasance, had the initial summary judgment burden to establish the absence of genuine issues of material fact and entitlement to judgment on this issue as a matter of law.

[¶27.] CRLP met their initial burden by introducing the removal resolution indicating that Mike had been removed for malfeasance. The resolution, dated July 28, 2008, was signed by a majority of the interests in CRLP and cited a host of acts of alleged malfeasance supporting Mike's removal.[10] Mike Casey did not dispute the allegations of malfeasance, and the resolution established a prima facie case of removal for malfeasance. "A prima facie case is established for summary judgment purposes when there 'are facts in evidence which if unanswered would justify persons of ordinary reason and fairness in affirming the question which the plaintiff is bound to maintain.'" *Dakota Indus.*, 2009 SD 39, ¶ 14, 766 NW2d at 514 (quoting Fin-Ag, Inc. v. Pipestone Auction Livestock Mkt., Inc.*,* 2008 SD 48, ¶ 33, 754 NW2d 29, 43) (citation omitted). Thus, CRLP met its initial summary judgment burden

10.     While we express no opinion on the validity of the allegations, the July 28, 2008 resolution cites a litany of acts and omissions supporting Mike Casey's removal. The referenced acts of malfeasance include: encouraging Pauline Casey to not make payments on the invoices submitted to her by CRLP and MBC; advising Pauline Casey to not negotiate or mitigate; failing to involve himself with CRLP until his termination at Bear Country; interrogating MBC's ranch hand; undermining CRLP's credibility with Farm Credit Services, insurance providers, and the United States Forest Service; driving CRLP's cost higher by intervening in the valid action to collect money due and owing CRLP; failing to appear at legally noticed ranch meetings; encouraging and assisting Pauline Casey in removing her cattle once CRLP began the process of placing a lien on them; cutting chains and removing locks from gates on CRLP property to move Pauline Casey's cattle; and, refusing to return calls or emails regarding CRLP business over the past year.

and the burden of production shifted to Mike Casey to identify disputes of facts or law regarding the removal. *Id.* (citing SDCL 15-6-56(e)).

[¶28.] In response to CRLP's prima facie showing, Mike did not dispute or raise any issue of fact or law contesting malfeasance. He only argued that proper "procedures" for removal under the CRLP Agreement were not followed, a question of law we review de novo. *Midnight Star*, 2006 SD 98, ¶ 7, 724 NW2d at 336.

[¶29.] The CRLP Agreement regarding removal is unambiguous. The relevant section provides in part: "The General Partner will . . . be removed upon at least a Majority in Interest agreeing if: . . . the General Partner commits any act or omission of fraud or malfeasance to the Partnership's injury." CRLP Agreement § VI.D; *see also* SDCL 48-7-402(3) ("The general partner is removed as a general partner in accordance with the partnership agreement."). Further, the July 28, 2008 resolution reflects that 57% of the partnership interests voted for removal for malfeasance. Mike Casey has not, however, identified (in the trial or this appellate proceeding) any partnership provision suggesting that the removal procedure was improper.[11] Because Mike Casey failed to identify any factual dispute regarding

---

11. On appeal, both Appellants and Appellees have asserted that the opposing parties were required to utilize CRLP Agreement section XVII, an alternative dispute resolution (ADR) provision requiring arbitration with respect to partnership disputes. For the reasons expressed below, we decline to consider the arbitration issues.

    Initially before the circuit court, Mike Casey argued that the ADR provision was "eschewed" when the Kevin Casey faction attempted to void Mike Casey's election as general partner at the March 12, 2008 meeting. Because we conclude that Mike Casey remained a general partner after that meeting, he prevailed on the underlying issue and we need not consider his ADR argument as it could provide no additional relief. Similarly, because CRLP

(continued . . .)

malfeasance, and because he has failed to identify any partnership provision suggesting an improper removal procedure, Mike and Pauline failed to carry their responsive summary judgment burden. Therefore, the circuit court erroneously concluded that Mike Casey remained a general partner whose consent to sue was necessary.

---

(. . . continued)

> prevails on the issues it contends were subject to ADR, we also decline to address CRLP's ADR argument on its issues.

> The other procedural irregularity raised by Mike Casey before the circuit court involved the assertion that CRLP failed to follow the ADR provision before they voted to remove him by the July 28, 2008 resolution. We believe that this purported irregularity is without merit.

> Mike Casey was removed pursuant to a CRLP vote under CRLP Agreement section VI.D. *See supra* ¶ 29. That provision specifically allowed removal for malfeasance. To require arbitration before conducting a partnership vote under that controlling partnership removal provision would render arbitration over removal not ripe for consideration. Until a formal partnership vote, one could only speculate whether there were sufficient votes and a bona fide dispute to arbitrate. Moreover, requiring arbitration before voting under governing partnership provisions would make section VI.D and all other partnership provisions meaningless. If arbitration were required before partnership decisions were made as provided in controlling partnership provisions, all partnership decisions would be governed by an arbitrator rather than the partnership provision governing the issue. We do not interpret agreements to make its provisions meaningless or in a manner that leads to an absurd result. Nelson v. Schellpfeffer, 2003 SD 7, ¶ 12, 656 NW2d 740, 743 ("[T]his Court is constrained from interpreting a contract literally if doing so would produce an absurd result." (citation omitted)); *Estate of Fisher*, 2002 SD 62, ¶ 14, 645 NW2d at 846 ("A contract should not be interpreted in a manner that renders a portion of it meaningless." (citation omitted)).

> Mike and Pauline Casey finally argue that the breach of contract claims against Pauline were subject to ADR. However, this was not argued before the circuit court. "We have repeatedly stated that we will not address for the first time on appeal issues not raised below." *Hall, supra* n 1.

*Conclusion*

[¶30.] MBC's breach of contract claim against Pauline Casey arose in the ordinary course of MBC's partnership business of leasing its real property. Initiating legal remedies to enforce such a partnership debt against a third party was a matter within the ordinary course of MBC business. Because the partnership agreement authorized ordinary course of business acts upon a simple majority vote of the partnership interests, the circuit court erred in concluding that absent unanimous consent, MBC's suit was unauthorized.

[¶31.] Mike Casey became a general partner of CRLP upon the unanimous vote of the partners and the timely transfer of Pauline Casey's CRLP interests. Any CRLP partnership provisions that may have been violated with regard to the election and transfer were waived. Nevertheless, Mike Casey failed to raise a disputed issue of fact or law in response to CRLP's summary judgment showing that Mike Casey was subsequently removed. Because, for purposes of this summary judgment proceeding, we must therefore assume that Mike Casey was removed as a general partner, his consent was not necessary to maintain this suit. Because Mike Casey's consent to sue is not necessary, the circuit court erred in concluding that CRLP's suit was unauthorized.

[¶32.] Reversed.

[¶33.] GILBERTSON, Chief Justice, and KONENKAMP, MEIERHENRY, and SEVERSON, Justices, concur.