# In the Iowa Supreme Court

No. 22–1601

Submitted December 18, 2024—Filed February 28, 2025

**Hunter Three Farms, LLC,**

Appellant,

vs.

**Richard Hunter,** individually and as a member of Hunter Three Farms,

Appellee.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Greene County, Derek Johnson, judge.

A member of a limited liability company contends the company lacks standing to pursue a claim against him without his consent. **Decision of Court of Appeals Vacated; District Court Judgment Reversed and Case Remanded.**

McDonald, J., delivered the opinion of the court, in which all participating justices joined. McDermott and May, JJ., took no part in the consideration or decision of the case.

Adam J. Babinat (argued) and Bradley M. Strouse of Redfern, Mason, Larsen & Moore, P.L.C., Cedar Falls, for appellant.

Spencer S. Cady (argued) and Brianna L. Long of Nyemaster Goode, P.C., Des Moines, and Justin E. LaVan and Benjamin J. Kenkel of Dickinson, Bradshaw, Fowler & Hagen, P.C. (until withdrawal), Des Moines, for appellee.

**McDonald, Justice.**

The question presented in this appeal is whether a majority of the voting members of a limited liability company can authorize the company to file a suit against another voting member of the company to recover funds the nonconsenting member allegedly owed the company. For the reasons expressed below, we conclude that a majority of the voting members can authorize such a suit in the ordinary course of the activities of the company.

I.

Brothers Robert, Gary, and Richard Hunter are experienced and longtime farmers and farm operators. They did business together in a general partnership named Hunter Farms. In March 2017, the brothers converted the general partnership into a limited partnership for a brief period before converting the limited partnership into a limited liability company, Hunter Three Farms, LLC (the LLC). The LLC was member-managed. The brothers each owned twenty voting units of the LLC,[1] and Hunter of Iowa, Inc., owned forty nonvoting units. The LLC maintained the same tax identification number as the Hunter Farms general partnership.

The LLC was formed without an operating agreement. However, shortly after the LLC was formed, it filed a short statement of authority with the Iowa Secretary of State. The statement of authority described certain real property owned by the LLC in Grimes, established certain restrictions on the sale or encumbrance of that property, and provided the mailing and principal address of the LLC. The filed statement of authority also included a provision stating,

---

[1]Robert and Gary transferred their twenty voting units to the Robert P. Hunter Revocable Trust and Gary G. Hunter Revocable Trust, respectively. For ease of reference, when discussing the LLC's operations, we will continue to refer to the voting members as Robert and Gary rather than their respective revocable trusts.

"A majority of the voting membership interests are authorized to make ordinary business decisions. All other decisions, including any change to this Statement of Authority, will require the consent of all members."

The dispute in this case relates to settlement proceeds allegedly owed to the LLC. In 2018, Richard submitted a claim to the Syngenta Corn Seed Settlement Program on behalf of "Hunter Farms." He did not tell his brothers that the program existed or that he was making a claim. On the claim form, Richard listed "Hunter Farms" as the producer entitled to the settlement proceeds. The form requested the "Tax ID Number for this Producer." Richard entered the LLC's tax identification number as the producer making the claim. He signed the claim form, stating that he was authorized to file the claim on behalf of the identified entity:

> I declare that I am the Producer (or Representative Claimant) entitled and/or authorized to make claims for the bushels listed in this Claim Form, and that no other person or entity has made claims for my share in the bushels listed in this Claim Form to the best of my knowledge. If the Producer is a business or other legal entity, I certify that I am authorized to act on behalf of the Producer submitting this Claim Form.

Richard received a $62,467.91 settlement payment on behalf of the identified producer. Richard deposited the payment into a bank account under the name of "Hunter Iowa Farms, Inc." The LLC did not have access to that account, nor did Robert or Gary.

Robert and Gary did not learn of the settlement payment until Syngenta issued a Form 1099-MISC to the LLC. Syngenta issued a Form 1099-MISC to the LLC because Richard used the LLC's tax identification number to identify the producer on the settlement claim form. After receiving the Form 1099-MISC, Robert and Gary sent a demand letter to Richard requesting that he distribute their respective shares of the settlement funds or provide all proceeds from the

settlement to the LLC. Richard, through his son Steven, declined. He claimed that he had only applied for his third of the settlement money and that he was entitled to the entirety of the funds he received.

Robert and Gary then voted to have the LLC file this direct action against Richard, without Richard's consent, to recover the settlement proceeds owed to the LLC. The petition asserted claims for (1) breach of fiduciary duty, (2) breach of the duty of good faith and fair dealing, (3) conversion, and (4) unjust enrichment.

Richard filed a motion for summary judgment. Richard argued that the LLC lacked standing to sue him. He contended that the statement of authority was controlling and that it required the consent of all members to take any action beyond "ordinary business decisions." In addition, he argued, in the absence of an operating agreement, the Code requires the consent of all voting members to undertake any action outside "the ordinary course of the activities of the company." Iowa Code § 489.407(2)(*d*) (2021). Richard then claimed that the LLC's decision to file a lawsuit against him was not an ordinary business decision and was outside the ordinary course of activities for the company. Richard thus concluded that the LLC was required to obtain the consent of all voting members before initiating suit, and the failure to do so deprived the LLC of standing to sue him. In Richard's view, in the absence of unanimity, the voting members of the LLC were required to file a derivative suit on behalf of the company to collect the funds he allegedly owed the company.

The LLC resisted Richard's motion and filed its own motion for summary judgment. The LLC rejected that standing was a concern in this case, arguing instead that this was an issue of authority. The LLC claimed it had the authority to file suit against Richard based on a majority vote of the members because a

lawsuit to recover funds owed to the LLC was within the LLC's ordinary course of activities. Additionally, the LLC argued this action was proper because all *disinterested* members (Robert and Gary) voted to pursue the litigation. The LLC argued that because the suit was authorized under either of these theories, it had standing to initiate this action against Richard to the extent standing was implicated here. The LLC also sought judgment on the merits of its claims, arguing that it was entitled to judgment as a matter of law against Richard.

The district court granted Richard's motion for summary judgment and dismissed the case. The district court reasoned that this litigation was not within the scope of the LLC's ordinary course of business activities and that the decision to file the action against Richard required the unanimous approval of all voting members, including Richard. Because Richard did not vote in favor of the LLC filing suit against him to recover monies owed to the LLC, the decision to file suit was not proper, and the LLC lacked standing to pursue the claim.

The LLC appealed, and we transferred the case to the court of appeals. There, a divided panel reversed the district court ruling. The majority concluded that the district court erred in granting Richard's motion for summary judgment. The majority held that "an LLC may sue one of its member-managers under exceptional circumstances if all disinterested members authorize litigation." Here, all disinterested members authorized the litigation against Richard. The dissenting judge would have affirmed the district court's dismissal. The dissent declined to read a "disinterested members" or "exceptional circumstances" requirement into the relevant provisions of Iowa Code chapter 489 and concluded that this lawsuit was outside the ordinary course of the LLC's activities. The dissent thus maintained that the unanimous consent of all voting members was required to initiate this action. In the absence of unanimous

consent, the dissent noted that the members were free to initiate a derivative suit on behalf of the LLC.

We granted Richard's application for further review. Our review of the district court's ruling is for the correction of errors at law. *Kunde v. Est. of Bowman*, 920 N.W.2d 803, 806 (Iowa 2018).

## II.

## A.

We first clarify a point of doctrinal confusion. Richard argues, and the district court concluded, that the LLC lacked standing to sue because this was a matter outside the ordinary course of activities of the company that required the consent of all voting members of the LLC. In our caselaw, standing is a term of art. To have standing to sue, "a complaining party must (1) have a specific personal or legal interest in the litigation and (2) be injuriously affected." *Iowa Citizens for Cmty. Improvement v. State*, 962 N.W.2d 780, 790 (Iowa 2021) (quoting *Citizens for Responsible Choices v. City of Shenandoah*, 686 N.W.2d 470, 475 (Iowa 2004)). "Whether litigants have standing does not depend on the legal merit of their claims, but rather whether, if the wrong alleged produces a legally cognizable injury, they are among those who have sustained it." *Citizens for Responsible Choices*, 686 N.W.2d at 475. There is no doubt the wrong alleged in this case produced an injury. The LLC asserts a specific legal interest in the settlement funds and asserts it was injured when Richard allegedly converted the settlement funds and unjustly enriched himself by taking possession of the settlement funds. This is sufficient to establish standing. *See id.*

The LLC correctly argues that the real question presented in this case is one of authority rather than one of standing. "[A] party must have capacity to sue before the party may commence and maintain a cause of action." *Iowa Coal*

*Mining Co. v. Monroe County*, 555 N.W.2d 418, 428 (Iowa 1996). "Capacity relates to a party's personal or official right to litigate the issues presented by the pleadings. Want of capacity to sue has reference . . . to legal disability . . . which deprives a party of the right to come into court." *Id.* (quoting 59 Am. Jur. 2d *Parties* § 24, at 410 (1987)). Generally, "a limited liability company has the capacity to sue and be sued." Iowa Code § 489.105(1). Whether that capacity was properly authorized is a question of governance. *See, e.g., Iowa Individual Health Benefit Reins. Ass'n v. State Univ. of Iowa*, 876 N.W.2d 800, 806 (Iowa 2016) (stating that the enabling legislation granting a specific nonprofit corporation the power to "[s]ue or be sued" provided it the "authority" to sue (quoting 1995 Iowa Acts ch. 5, § 12 (codified at Iowa Code § 513C.10(5)(*b*) (1997)))); *Berger v. Gen. United Grp., Inc.*, 268 N.W.2d 630, 635 (Iowa 1978) ("Authority to sue for corporate injuries ordinarily reposes in corporate management."); *Lakes Gas Co. v. Terminal Props., Inc.*, No. 05–1266, 2006 WL 1229934, at *7 n.3 (Iowa Ct. App. Apr. 26, 2006) ("Because Hampton was managed by its members, authority was to be exercised by all members, and action could be taken only by a majority of the members, Terminal Properties did not have the authority to sue in its own right.").

### B.

Having clarified the distinction between standing and authority, we now address the issue of authority. "[T]he limited liability company is an unincorporated business association comprised of members who either manage the limited liability company directly or who delegate that task to managers." 5 Matthew G. Doré, *Iowa Practice Series: Business Organizations* § 13:1, at 322 (2024–2025 ed. 2024) [hereinafter Doré, *Business Organizations*]. Limited liability companies operate as a hybrid of both corporations and partnerships.

*See Elf Atochem N. Am., Inc. v. Jaffari*, 727 A.2d 286, 290 (Del. 1999) ("The LLC is an attractive form of business entity because it combines corporate-type limited liability with partnership-type flexibility and tax advantages."); Doré, *Business Organizations* § 13:1, at 322–23.

Iowa has adopted the Revised Uniform Limited Liability Company Act to govern the organization, governance, and operation of limited liability companies. *See* Iowa Code § 489.101. Under Iowa law, a limited liability company is "an entity distinct from its members" with "the capacity to sue and be sued in its own name and the power to do all things necessary or convenient to carry on its activities." *Id.* §§ 489.104(1), .105(1). Typically, governance and operation of a limited liability company are controlled by an operating agreement agreed to by the members. *See id.* §§ 489.110–.112. If the company has an operating agreement, it is binding. *See id.* § 489.111(2); *Homeland Energy Sols., LLC v. Retterath*, 938 N.W.2d 664, 687 (Iowa 2020). If the company does not adopt an operating agreement, the company is governed by the default provisions set forth in chapter 489. *See* Iowa Code § 489.110(2) ("To the extent the operating agreement does not otherwise provide for a matter described in subsection 1, this chapter governs the matter.").

The parties in this case did not adopt an operating agreement. However, they did adopt a statement of authority which provides that "ordinary business decisions" can be made by "[a] majority of the voting membership interests," while all other decisions "require the consent of all members." Richard argues that the statement of authority is, effectively, an operating agreement that overrides the default statutory provisions in chapter 489. Richard's argument is unavailing. "A statement of authority affects only the power of a person to bind a limited liability company to persons that are not members." *Id.* § 489.302(3).

The authority to bind the company to persons not members of the LLC is not at issue here, and the statement of authority is thus immaterial to the resolution of this appeal.

Due to the lack of an operating agreement governing the LLC, whether Robert and Gary had the authority to authorize the LLC to recover the settlement proceeds is governed by the default provisions in the Code. *See id.* § 489.110(2). The LLC is a member-managed limited liability company. "The management and conduct of the company are vested in the members." *Id.* § 489.407(2)(*a*). "Each member has equal rights in the management and conduct of the company's activities." *Id.* § 489.407(2)(*b*). "A difference arising among members as to a matter in the ordinary course of the activities of the company may be decided by a majority of the members." *Id.* § 489.407(2)(*c*). "An act outside the ordinary course of the activities of the company . . . may be undertaken only with the consent of all members." *Id.* § 489.407(2)(*d*).

We thus must determine whether litigation to recover funds allegedly owed to the company is a matter or act in the ordinary course of the activities of the company within the meaning of the statute. The statute does not define what constitutes matters or acts in the ordinary course of the activities of the company. This court has not yet opined on the issue. With respect to a similar term, this court has stated that " 'ordinary course of business' is a widely understood term" that means "transact[ing] business according to the usages and customs of the commercial world generally or of the particular community." *Comm. on Prof'l Ethics & Conduct v. McCullough,* 465 N.W.2d 878, 886 (Iowa 1991) (alteration in original) (quoting *Ordinary Course of Business, Black's Law Dictionary* 989 (5th ed. 1979)). Reference materials define the term "course of business" as "[t]he normal routine in managing a trade or business." *Course of*

*Business*, *Black's Law Dictionary* (12th ed. 2024). A treatise also explains that the similar "legal term of art 'ordinary course' of business, in a statute governing the . . . members of a limited liability company . . . is intended to encompass transactions that are part of the normal or customary routine, even if only occasional, of the commercial world generally, or of businesses of the same kind." 54 C.J.S. *Limited Liability Companies* § 12, at 544 (2020).

In the absence of controlling authority, we have examined the persuasive precedents, *see* Iowa Code § 489.1301 ("In applying and construing this chapter, consideration must be given to the need to promote uniformity of the law with respect to its subject matter among states that enact it."), many of which are thoroughly and helpfully discussed in the parties' briefing. In the partnership context, several courts have concluded that a suit against a partner is not a matter or act in the ordinary course of business of the company. *See Vecchitto v. Vecchitto,* No. CV084008482, 2008 WL 4210784, at *1 n.4, *3–4 (Conn. Super. Ct. Aug. 26, 2008) (holding that a suit against a partner for breach of fiduciary duty, breach of an obligation of good faith and fair dealing, and conversion was not within the partnership's ordinary course of business to sell frozen treats); *Great N. Cap. Mgmt. v. IAI Cap. Mgmt. Corp.*, No. C0–94–2602, 1995 WL 352857, at *1, *3 (Minn. Ct. App. June 13, 1995) (holding that a suit for breach of fiduciary duty against a partner was not an ordinary partnership matter and distinguishing a case involving a suit to enforce obligations owed the partnership); *Casey Ranch Ltd. P'ship v. Casey*, 773 N.W.2d 816, 822, 822 n.4 (S.D. 2009) (stating that the initiation of a lawsuit for debt collection against a nonpartner is typically within the ordinary course of business but implying in dicta that such a suit against a partner may not be). Other courts have taken these concepts from partnership law to reach similar results with respect to

limited liability companies. *See, e.g., Street Star Designs, LLC v. Gregory*, No. H–11–0915, 2011 WL 3925070, at *1, *3 (S.D. Tex. Sept. 7, 2011) (holding that half the members of a limited liability company lacked authority to cause the company to sue the other members because such action was not within the ordinary course of business); *Crouse v. Mineo*, 658 S.E.2d 33, 35, 37–38 (N.C. Ct. App. 2008) (holding that a law firm organized as a limited liability company whose usual business was the "provision of legal services to clients" was not "carrying on in the usual way" of the business in suing departing member for breach of fiduciary duty to recover company assets and for appointment of a receiver to wind up the affairs of the firm (quoting N.C. Gen. Stat. § 57C–3–23 (2007))).

We give respectful consideration to these decisions, but we do not find them applicable to this case. While the Code does not enumerate the matters or acts that fall within the ordinary course of the activities of the company and that can be approved by majority vote, the Code does identify some of the types of matters or acts that fall outside the ordinary course of the activities of the company and that require unanimous consent. Such matters or acts include "selling, leasing, exchanging, or otherwise disposing of all, or substantially all, of the company's property." Iowa Code § 489.407(2)(*d*). We can infer from these examples of the acts or matters that fall *outside* the ordinary course of activities the types of matters or acts that fall *within* the ordinary course of activities. *See Doe v. State*, 943 N.W.2d 608, 613 (Iowa 2020) (stating that "[w]e read statutes as a whole rather than looking at words and phrases in isolation" (quoting *Iowa Ins. Inst. v. Core Grp. of Iowa Ass'n for Just.*, 867 N.W.2d 58, 72 (Iowa 2015))). The enumerated examples show that matters or acts outside the ordinary course of activities of the company and that require unanimity are those material to the

ongoing operation of the company and thus material to the members' respective interests in the company. *See* Doré, *Business Organizations* § 13:18, at 370–71 (stating that "[d]ecisions *outside* the ordinary course of business" include "a sale of all or substantially all company assets").

Our conclusion that the Code's call for unanimity is to protect the interest of each of the members with respect to matters or acts material to the operation of the company is affirmed by other provisions within chapter 489 that require the unanimous agreement of the members to change the structure and governance of the company. *See, e.g.,* Iowa Code §§ 489.401(4)(*c*) ("After formation of a limited liability company, a person becomes a member . . . [w]ith the consent of all the members."), .407(2)(*e*) ("The operating agreement may be amended only with the consent of all members."), .602(4) ("A person is dissociated as a member from a limited liability company when . . . [t]he person is expelled as a member by the unanimous consent of the other members [in certain specified circumstances]."), .701(1)(*b*) ("A limited liability company is dissolved, and its activities must be wound up, upon . . . [t]he consent of all the members."), .701A(2)(*a*) ("Rescinding dissolution under this section requires . . . [t]he affirmative vote or consent of each member."), .1003(1) ("Subject to section 489.1014, a plan of merger must be consented to by all the members of a constituent limited liability company."), .1007(1) ("Subject to section 489.1014, a plan of conversion must be consented to by all the members of a converting limited liability company."), .1011(1)(*a*) ("A plan of domestication must be consented to . . . [b]y all the members . . . if the domesticating company is a limited liability company."), .1109 ("Unless the certificate of organization or an operating agreement otherwise provides, a voluntary assignment requires the unanimous consent of the members."). These types of organic transactions

require unanimity to protect each member's respective interests in the company and thus fall outside the ordinary course of activities. *See* Doré, *Business Organizations* § 13:18, at 370–71 (stating that "[d]ecisions *outside* the ordinary course of business" include "amendments to the operating agreement, and organic transactions (e.g., mergers or conversions)").

In sum, read as a whole, the default provisions in chapter 489 establish the types of matters or acts that require unanimous consent of the members of a limited liability company and the types of matters or acts that do not. Matters or acts material to ongoing operations of the company, such as the sale of all or substantially all the company's assets, that would materially affect each member's respective interest in the company require unanimous consent. Iowa Code § 489.407(2)(*d*). Acts changing the governance and structure of the limited liability company that could potentially impair a member's financial or governance interest in the company require unanimous consent. *See, e.g., id.* § 489.401(4)(*c*). These unanimity requirements allow each member to protect his or her interest in the operations of the company by exercising a veto over decisions material to the operation and governance of the company and thus material to the member's respective interest in the company. Where those types of material concerns are not implicated—i.e., matters or acts in the ordinary course of the company's activities—unanimity, or the veto right, is not necessary.

This suit does not involve a matter or act material to the ongoing operations of the LLC. This is an ordinary debt collection suit involving only a relatively small amount at issue compared to the property of the company. The settlement funds at issue are $ 62,467.91. The record is sparse on the size of the LLC and its operations, but the statement of authority notes that it takes seventy-five percent of the voting members to approve the sale or mortgage of the

company's Grimes property at less than eighty percent of the price of $24,356,000.

Nor does this suit involve organic transactions related to the governance of, structure of, or interests in the LLC. Instead, this is a suit to collect funds allegedly owed to the company. If the majority of the voting members could have authorized the LLC to file a claim for the settlement proceeds in the ordinary course, which nobody disputes, the same majority of the voting members should be able to authorize the LLC to recover the same settlement proceeds allegedly misappropriated from the company. *See* 6 Doré, *Business Organizations* § 39.4, at 651 ("Whether a business organization initiates or defends litigation is a business decision."); *see also Delbon Radiology v. Turlock Diagnostic Ctr.*, 839 F. Supp. 1388, 1392 (E.D. Cal. 1993) (stating that "enforcement of a partnership's claim will often be an ordinary matter" (quoting Alan R. Bromberg & Larry E. Ribstein, *Bromberg and Ribstein on Partnership* § 5.03(c), at 5:20–21 (1991))); *Casey Ranch*, 773 N.W.2d at 822 ("[I]nitiating suit to collect a partnership debt is generally considered to be within the ordinary course of the business of a partnership. . . . Therefore, commencing a lawsuit on behalf of a partnership to enforce a partnership claim incurred in the ordinary course of business is itself a matter in the ordinary course of business.").

An action to recover money owed to the company is an action in the ordinary course of activities. The fact that the funds were allegedly misappropriated by a member of the LLC does not render the suit to collect such proceeds outside the normal course of activities of the LLC. *See Lane v. Krein*, 375 S.E.2d 351, 352 (S.C. Ct. App. 1988) (treating suit by one partner for conversion of partnership property as an ordinary matter connected with the partnership business subject to majority approval).

III.

Because a majority of the members of the LLC could authorize the LLC to file a suit to recover funds allegedly owed to the LLC, the LLC had the authority to file this suit. We vacate the decision of the court of appeals and reverse the judgment of the district court. We remand this matter for further proceedings.

**Decision of Court of Appeals Vacated; District Court Judgment Reversed and Case Remanded.**

All justices concur except McDermott and May, JJ., who take no part.